PHILLIP A. TALBERT
United States Attorney
ANGELA L. SCOTT
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

## IN THE UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:24-CR-00043-KJM |
| Plaintiff, | UNITED STATES'S OPPOSITION TO DEFENDANT'S MOTION FOR BAIL REVIEW |
| v. | DATE: June 12, 2024 |
| ZIMNAKO SALAH, | TIME: 2:00 p.m. |
| Defendant. | COURT: Hon. Carolyn K. Delaney |

## I.      **INTRODUCTION**

The defendant, Zimnako Salah, a naturalized United States citizen originally from Iraq, who is currently facing California state charges for carrying a loaded firearm and utilizing a stolen license plate, and who, evidence indicates, possessed component bomb parts, and made hoax bomb threats in churches across the western United States, poses a serious risk of flight that no conditions, or combination of conditions, can overcome.  18 U.S.C. § 3142(f)(2)(A).  As this Court found originally, defendant should be detained pending trial.

## II.      **BACKGROUND**

### A.      **Defendant Travels Interstate to Make Hoax Bomb Threats at Churches[1]**

On Sunday, November 12, 2023, Defendant Zimnako Salah ("Defendant") committed a bomb hoax at a church located in the Eastern District of California.  Between September 24, 2023, and his

---

[1] The complaint affidavit sets forth in further detail the information contained in this section.  I hereby incorporate the complaint affidavit as though fully set forth herein.

arrest in San Diego County on November 28, 2023, Defendant visited at least four Christian churches, one in Arizona, two in California, and one in Colorado.  During each of the trips, Defendant—who self-identifies as Muslim—visited only briefly and did not attend church services.  Each time, Defendant carried a backpack.  At two of the four churches, he placed a backpack in the church and immediately left.  Specifically, at the Arizona church, he left the backpack in the sanctuary during the church service. In one of the California churches—the church located in the Eastern District of California—he tied the backpack to the toilet in the men's restroom.  Given the suspicious circumstances, church employees at both churches treated the backpacks as potentially containing a bomb.  As a result of the Eastern District of California bomb hoax, the church has increased security and incurred substantial additional security costs.

During his travels around the southern and western United States, Defendant frequently changed license plates on his vehicle in what appears to be an attempt to avoid detection by law enforcement.  On November 25 (in Texas) and again on November 28 (in California), Defendant was arrested with an unregistered firearm, found under the driver's seat of his vehicle.  During the Texas arrest, the gun was loaded.  Upon Defendant's arrest in San Diego, law enforcement found a magazine loaded with 15 hollow-point rounds right next to the pistol.  Additionally, prior to visiting the Colorado church, Defendant rented a storage unit located approximately fifteen minutes from that church.  Defendant stayed overnight in the unit and stored component parts for a destructive device or a hoax device, such as a propane cannister with wires taped to it, and strips of duct tape lined with nails.  An antisemitic statement was scrawled on the wall of the storage unit in Kurdish along with a reference to the Prophet Muhammad.

In an interview with law enforcement as further detailed in the complaint affidavit, Defendant denied visiting the church in Colorado, but later admitted to it when confronted with a photo of himself there.  When stopped by a State Trooper in Texas, Defendant denied knowing that the wrong license plate was affixed to his vehicle despite evidence that he stole at least one license plate and routinely interchanged license plates between vehicles.  Upon his arrest in San Diego, Defendant denied ever being arrested or placed in handcuffs by law enforcement officers in the past, even though he had been arrested three days earlier, on November 25, 2023, by Texas State Troopers.  Defendant stated that he

did not own or possess a firearm; however, after being shown a picture of the firearm discovered in his vehicle by San Diego Police, Defendant stated that it was his weapon in the photograph.  During this interview, Defendant also denied meeting with people while in El Cajon on November 28, even though agents had observed him meeting with multiple unknown males before his arrest.

## B.   The Defendant is a Naturalized Citizen with Ties To Iraq

Based on the case agent's review of Defendant's immigration records, undersigned counsel was informed that Defendant is a naturalized citizen who came to the United States in 1999 and was naturalized in 2009.  He resided in Istanbul, Turkey before coming to the United States.  Based on statements that Defendant made during a law enforcement interview, Defendant is Kurdish and originally from Northern Iraq.  Defendant currently resides in Arizona and has no stable employment. Based on undersigned counsel's conversation with the investigating FBI agents, Defendant's only family member in the United States appears to be his mother with whom he resides in Arizona.  His mother traveled to Iraq in January 2023 and returned only recently in December 2023, after Defendant's arrest.

## C.   Procedural History

A San Diego Harbor Police Federal Bureau of Investigation (FBI) Task Force Officer (TFO) informed the lead FBI case agent working this investigation that Defendant was arrested in San Deigo on or about November 28, 2023, for state charges related to the unregistered firearm found under the driver's side mat of his vehicle along with a stolen license plate that Defendant displayed on his vehicle. According to the TFO, Defendant appeared in state court on these charges, and the judge initially set his bail at $1,000,000.  Thereafter, on December 1, 2023, the judge ruled that Defendant was not eligible for bail.  On December 14, 2023, Defendant appeared in state court for a preliminary hearing.  After the hearing, the judge determined Defendant to be a danger to the public if released, found that the charges were supported by probable cause, and ordered Defendant detained pending trial.  On February 15, 2024, a trial setting hearing was held before another state court judge.  That judge continued Defendant's trial to March 10, 2024, and ordered him released on conditions.

On February 15, 2024, before Defendant was released from state custody, the Honorable Jeremy D. Peterson, United States Magistrate Judge in the Eastern District of California, authorized a complaint

and arrest warrant for Defendant for a violation of 18 U.S.C. § 1038 (false information and hoaxes).
Dkt. 2.  Defendant was transferred from state custody into federal custody in San Diego on February 16,
2024, pursuant to that complaint.  Defendant made his initial appearance on that complaint before a
United States Magistrate Judge in the Southern District of California (SDCA) on February 20, 2024.
Exhibit A (*United States v. Zimnako Salah*, 3:24-mj-00637-MSB (SDCA) Criminal Docket) at  Dkt. 4.
A redacted version of the complaint was unsealed on February 23, 2024.  EDCA Dkt. 6.  At a continued
detention hearing on February 23, 2024, the SDCA Magistrate Judge ordered Defendant detained, and
on March 5, 2024, ordered Defendant transported to the Eastern District of California.  Exh. A at Dkt. 9,
11.  Notably, in the Court's written detention order attached hereto as Exhibit B, the SDCA Magistrate
Judge found significant that Defendant possessed a firearm.

On February 29, 2024, Defendant was indicted in the Eastern District of California for a
violation of 18 U.S.C. § 1038 as a result of his actions at the Roseville, California church on November
12, 2023.  EDCA Dkt. 8.  On April 5, 2024, Defendant made his initial appearance before the Honorable
Carolyn K. Delaney, United States Magistrate Judge, and was ordered detained on the basis of both
flight risk and danger to the community.  EDCA Dkt. 12.[2]  On June 5, 2024, Defendant filed a motion
for bail review, noting that his mother is willing to sign an unsecured bond and act as a third-party
custodian.  EDCA Dkt. 21.

Defendant's guideline range for a violation of 18 U.S.C. § 1038 could be as high as
approximately 121-151 months if certain Sentencing Guidelines enhancement apply, including the
terrorism enhancement.  *See* U.S.S.G. §§ 2A6.1, 3A1.4.  The statutory maximum for a violation of
section 1038 that does not result in injury is five years.

### D.    Defendant's Jail Calls

Law enforcement obtained Defendant's recorded jail calls during the time he was detained on the
aforementioned state charges.  Undersigned counsel has reviewed a summary of those calls and

---

[2] Although the minutes of the hearing note that the Court ordered Defendant detained as both a
flight risk and a danger, only the "safety of the community" box was checked in the written order. Dkt.
16.  The reasons for detention marked on the order, however, indicate that the Court concluded that
Defendant is also a flight risk (*e.g.*, lack of stable employment, lack of community ties, significant
foreign ties).

discussed them with investigating agents.  During the first call on January 22, 2024, Defendant appears

to be speaking to his mother.  He directs her to locate and hide an item in their shared residence.  Later,

on January 28, 2024, Defendant advised his mother not to let anyone into their shared residence to

search or inspect.  These summaries are attached hereto as Exhibit C.[3]

### III.      <u>STANDARD OF REVIEW</u>

Pursuant to 18 U.S.C. § 3142(f), a detention hearing may be reopened "if the judicial officer

finds that information exists that was not known to the movant at the time of the hearing and that has a

material bearing on the issue whether there are conditions of release that will reasonably assure the

appearance of such person as required and the safety of any other person and the community."  18

U.S.C. § 3142(f)(2)(B).  Defendant's motion does not meet this detention hearing reopening standard in

that he does not propose a release plan that was not previously available.  Defendant's mother could

have signed an unsecured bond and acted as Defendant's third-party custodian at any time since his

arrest.  *See United States v. Caruso*, No. 20-CR-00165-PHX-JJT, 2021 WL 1811586, at *2 (D. Ariz.

May 6, 2021) (upholding magistrate judge's denial of defendant's motion to reopen detention hearing

and noting that defendant knew of his cryptocurrency assets at the time of the original hearing.)

Even if the Court considers this new information, Defendant is not entitled to release.  As this

Court is aware, the factors to be considered in determining whether a defendant is released or detained

are set forth in 18 U.S.C. § 3142(g):

> (1)   the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2)   the weight of the evidence against the person;
>
> (3)   the history and characteristics of the person, including—
>        (A)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
>        (B)   whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

---

[3] Undersigned counsel highlighted the relevant language in the exhibit for the Court's convenience.

(4)   the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Whether to detain a defendant as a flight risk pending trial is determined by a preponderance of evidence.  *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985).  "A finding that a defendant is a danger to any other person or the community must be supported by 'clear and convincing evidence.'"  *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).  The government may satisfy this burden by presenting these facts by proffer.  *See* 18 U.S.C. § 3142(f) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."); *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) ("As in a preliminary hearing for probable cause, the government may proceed in a detention hearing by proffer or hearsay.").

## IV.   <u>ARGUMENT</u>

### A.   <u>Defendant Poses a Substantial Risk of Non-Appearance and a Danger to the Community</u>

In this case, the government has established by a preponderance of the evidence that there are no conditions or combinations of conditions that will assure Defendant's appearance.  The government has also established by clear and convincing evidence that there are no conditions or combinations of conditions that will assure the safety of the community were Defendant released.  The term "safety of…the community," as used in Section 3142, encompasses not only the threat of physical violence but also the danger of the defendant putting the community at risk by engaging in criminal activity.  *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (citing Senate Report No. 98-225).

The first section 3142(g) factor that the Court must consider—the nature and circumstances of the offense—weighs in favor of detaining Defendant as both a flight risk and a danger.  The nature and circumstances of the offense charged are serious. The offense involves repeated, interstate acts of terror that caused significant concern to several witnesses and necessitated a law enforcement response that spanned multiple states.  The offense also involved component bomb parts and a firearm.  This coupled with the repeated nature of his crimes over a three-month period led federal law enforcement officers to believe that Defendant was mobilizing to commit an act of violence.  While section 1038 is not

expressly a Federal crime of terrorism, defendant's activities caused terror and were intended to do so. Moreover, the evidence set forth in the complaint affidavit indicates that he took great effort to conceal his activity and whereabouts from law enforcement, including switching license plates on his vehicles, even after he was arrested in Texas for displaying the incorrect license plate, and cutting up used license plates.  He also possessed at least four phones.  He has blatantly lied to law enforcement during three separate interviews, including about his visits to churches, his knowing possession of a firearm and use of stolen license plates, and his phone numbers.  Additionally, defendant faces a five-year statutory maximum for the crime alleged in the complaint, and his Guidelines range could exceed that statutory maximum.  Consequently, defendant is facing a five-year term of imprisonment, which provides significant incentive to flee.

The second factor also weighs in favor of detention.  While the weight of the evidence is "the least important" of the various factors, *Motamedi*, 767 F.2d at 1407, the affidavit supporting the complaint makes clear that evidence against Defendant is overwhelming.  Defendant was captured on various church surveillance systems and seen by several witnesses.  Defendant made incriminating statements and possessed incriminating bomb-related evidence.  Defendant also possessed evidence tying him to the churches, including a pamphlet from one of the churches.

The third factor, nature and characteristics of the defendant, also weighs in favor of detention, particularly regarding Defendant's risk of flight.  In looking at the third factor, the Ninth Circuit has noted the importance of looking to a defendant's ties to the community.  Factors to be considered regarding alien Defendants include how long the defendant has resided in this country, whether defendant has been employed in the United States, whether defendant owns any property in this country, and whether defendant has any relatives who are United States residents or citizens. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990).  While Defendant is a naturalized citizen, his recent travel and foreign ties make these factors relevant.  Here, Defendant faces state charges that involve his possession of a concealed firearm and a stolen license plate.  He also faces a five-year statutory maximum on the pending federal charge.  Defendant has traveled recently to Iraq where he remained for approximately three months.  He returned from Iraq in August 2023 and started visiting these churches in September 2023.  Defendant has no stable employment.  His sole family tie in the United States

appears to be his mother, who only recently returned to Arizona after nearly a year-long stay in Iraq. Summary translations of jail calls between the Defendant and his mother indicate that he has directed her to conceal evidence, making her an inappropriate surety.

The fourth factor -- the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release – also weighs in favor of detention. Based on defendant's activities and his pending state charges, Defendant poses a danger to the community. He visited four churches in a span of two months where he made or attempted to make hoax bomb threats. His backpacks terrorized church members. His behavior in these churches is consistent with dry runs of terror attacks. This conclusion is further supported by the fact that he rented a storage unit in Colorado – a state to which he has no ties – where he spent the night, scrawled an antisemitic statement on the wall, and stored component bomb parts. Additionally, he has made statements to neighbors expressing his disdain for the United States and Christianity. He was arrested twice in the span of a week with a firearm hidden under his driver's-side floor mat. Defendant is currently facing state charges related to his possession of that firearm and a stolen license plate. Defendant has repeatedly lied to police and federal agents about his conduct, undermining any trust this Court could have that he would comply with conditions of release. Given his access to guns and bombmaking materials, and his demonstrated intent to terrorize Christian churches, the consequences of his non-compliance could be deadly. Those who have interacted with him repeatedly paint a picture of a disgruntled, unstable individual. Given his erratic and increasingly concerning behavior, the United States is very concerned that he would continue to terrorize and potentially harm others were he to be released.

Defendant has a strong incentive to flee the country, as well as the foreign ties and travel experience to do so. His actions during the investigation, including his interactions with law enforcement and his actions after his arrest in Texas, demonstrate that he is not amenable to supervision. The posting of an unsecured bond from his mother does little, if anything, to ensure Defendant will appear in this Court to face his charges. Indeed, his mother had no ability control him previously when he was not facing serious state and federal charges. Additionally, there is strong evidence that Defendant is a danger to the community. If released, there is a significant chance that Defendant will continue terrorizing churches, carrying concealed, unregistered, loaded firearms, stealing license plates

and lying to law enforcement.  The bombmaking materials found in his rented storage unit near a Colorado church—a propane canister with electrical wires extruding from it, with improvised shrapnel (nails affixed to duct-tape)—indicate Defendant's ability and intent to carry out his threat to bomb a Christian church. No conditions or combination of conditions can assure the public's safety.

## V.    <u>CONCLUSION</u>

For the reasons set forth above, Defendant is not entitled to reopen his detention hearing.  Even if the Court were to reopen it, the United States respectfully submits that it has established by a preponderance of evidence that Defendant poses a serious risk of flight and by clear and convincing evidence that Defendant poses a danger to the community, neither of which can be mitigated by conditions of release.  The government respectfully requests that the Court deny the defendant's Motion for Bail Review.

Respectfully submitted,

Dated:  June 10, 2024

PHILLIP A. TALBERT
United States Attorney

By:  */s/ Angela L. Scott*
PHILLIP A. TALBERT
Assistant United States Attorney

# EXHIBIT A

CLOSED

# U.S. District Court
## Southern District of California (San Diego)
### CRIMINAL DOCKET FOR CASE #: 3:24-mj-00637-MSB All Defendants

Case title: USA v. Salah

Date Filed: 02/20/2024

Date Terminated: 03/06/2024

---

Assigned to: Magistrate Judge Michael S. Berg

### Defendant (1)

**Zimnako Salah**
*TERMINATED: 03/06/2024*

represented by **Federal Defenders**
Federal Defenders of San Diego
225 Broadway
Suite 900
San Diego, CA 92101-5008
(619)234-8467
Fax: (619)687-2666
Email: cassd_ecf@fd.org
*TERMINATED: 02/22/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: Public Defender or
Community Defender Appointment

**Samuel J. Pope**
Federal Defenders of San Diego, Inc.
225 Broadway
Ste. 900
San Diego, CA 92103
619-234-8467
Email: samuel_pope@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: Public Defender or
Community Defender Appointment

**Pending Counts**

None

**Disposition**

**Highest Offense Level (Opening)**

None

**Terminated Counts**                                                                      **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                                                             **Disposition**

18:1038(a)(1)(A) - False Information and
Hoaxes

---

**Plaintiff**

**USA**                                                    represented by   **U S Attorney CR**
                                                                            U S Attorneys Office Southern District of
                                                                            California
                                                                            Criminal Division
                                                                            880 Front Street
                                                                            Room 6293
                                                                            San Diego, CA 92101
                                                                            (619)557-5610
                                                                            Fax: (619)557-5917
                                                                            Email: Efile.dkt.gc2@usdoj.gov
                                                                            *LEAD ATTORNEY*
                                                                            *ATTORNEY TO BE NOTICED*
                                                                            *Designation: Assistant United States*
                                                                            *Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/16/2024 | | Arrest of Zimnako Salah. (no document attached) (mef) (Entered: 02/20/2024) |
| 02/20/2024 | 1 | SEALED OUT OF DISTRICT COMPLAINT as to Zimnako Salah. (Attachments: # 1 Info Sheet)(mef) (Entered: 02/20/2024) |
| 02/20/2024 | 2 | Set/Reset Duty Hearings as to Zimnako Salah: Initial Appearance set for 2/20/2024 before Magistrate Judge Michael S. Berg. (no document attached) (fjp) (Entered: 02/20/2024) |
| 02/20/2024 | 3 | Set/Reset Duty Hearings as to Zimnako Salah: Initial Appearance - ODC set for 2/20/2024 before Magistrate Judge Michael S. Berg. (no document attached) (fjp) (Entered: 02/20/2024) |
| 02/20/2024 | 4 | Minute Entry for proceedings held before Magistrate Judge Michael S. Berg: Government oral motion to unseal the case for hearing purposes only is granted. Initial Appearance - Out of District Complaint as to Zimnako Salah held on 2/20/2024. Oral proffer confirmed. Federal Defenders appointed for Zimnako Salah. Government oral motion to detain(Flight/Danger). ( Detention Hearing - RF/DC set for 2/23/2024 01:30 PM before Magistrate Judge Michael S. Berg. Removal/ID Hearing set for 3/5/2024 01:30 PM before Magistrate Judge Michael S. Berg.) Rule 5 advisement provided. Case ordered resealed. (Interpreter Luqman Barwari). (CD# 2/20/2024 MSB 24-1:5:07-5:08). (Plaintiff Attorney Carling Donovan AUSA). (Defendant Attorney Veronica Portillo-Heap FD-S/A). (no document attached) (aje) (Entered: 02/21/2024) |

Case 2:24-cr-00043-KJM   Document 22   Filed 06/10/24   Page 13 of 21

| | | |
|---|---|---|
| 02/20/2024 | 5 | ***Kurdish Interpreter needed as to Zimnako Salah (no document attached) (aje) (Entered: 02/21/2024) |
| 02/20/2024 | 6 | Oral MOTION to Detain (Flight/Danger)by USA as to Zimnako Salah. (no document attached) (aje) (Entered: 02/21/2024) |
| 02/21/2024 | 7 | NOTICE OF ATTORNEY APPEARANCE - AUSA Carling E. Donovan (cc: AUSA Carling E. Donovan) (alns) (Entered: 02/22/2024) |
| 02/22/2024 | 8 | NOTICE OF ATTORNEY APPEARANCE: appearing for Zimnako Salah (cc: FD Samuel J. Pope) (alns) (Entered: 02/23/2024) |
| 02/23/2024 | 9 | Minute Entry for proceedings held before Magistrate Judge Michael S. Berg: Detention Hearing as to Zimnako Salah held on 2/23/2024. USA oral motion for detention; motion granted as to Zimnako Salah. Defendant ordered detained without prejudice. Order of detention to be filed by Court. Defendant to be seen by medical staff at housing facility. (Interpreter Luqman Barwari). (CD# 2/23/2024 MSB 2:35-3:09). (Plaintiff Attorney Carling Donovan, AUSA). (Defendant Attorney Samuel Pope, FD). (no document attached) (mxl) (Entered: 02/26/2024) |
| 02/23/2024 | 10 | ORDER OF DETENTION as to Zimnako Salah. Signed by Magistrate Judge Michael S. Berg on 2/23/2024. (cxl) (Entered: 02/26/2024) |
| 03/05/2024 | 11 | Minute Entry for proceedings held before Magistrate Judge Michael S. Berg: Removal/ID Hearing as to Zimnako Salah held on 3/5/2024. Defendant admits identity. Waiver of rule 5 and warrant of removal filed in court. Defendant ordered transferred to the Eastern District of California. (Interpreter Luqman Barwari). (CD# 3/5/2024 MSB 1:43; 1:50-1:54). (Plaintiff Attorney Carling Donovan, AUSA). (Defendant Attorney Samuel Pope, FD). (no document attached) (mxl) (Entered: 03/06/2024) |
| 03/05/2024 | 12 | WAIVER of Rule 5 Hearings by Zimnako Salah (cc: (Plaintiff Attorney Carling Donovan, AUSA). (Defendant Attorney Samuel Pope, FD). / USM) (alns) (jmo). (Entered: 03/06/2024) |
| 03/05/2024 | 13 | WARRANT of Removal to District of Eastern District of California Issued as to Zimnako Salah. (cc: Plaintiff Attorney Carling Donovan, AUSA). (Defendant Attorney Samuel Pope, FD). / USM) (alns) (jmo). (Entered: 03/06/2024) |
| 03/06/2024 | 14 | NOTICE to Receiving District: **(Eastern District of California)**, of Case Removal, as to Zimnako Salah. The following documents are available on the public docket: 1 Out of District Complaint (Sealed), 8 Notice of Attorney Appearance - Defendant, 12 Waiver of Rule 5 Hearings, 7 Notice of Attorney Appearance - USA, 10 Order of Detention, 13 Warrant of Removal Issued. Additional documents will be sent via Email. To request additional transfer information and/or to submit acknowledgment re receipt of transfer, please email InterdistrictTransfer_CASD@casd.uscourts.gov.. (Additional items e-mailed to interdistricttransfer_caed@caed.uscourts.gov on 3/6/2024. Mailed via U.S. Mail to California Eastern District on 3/8/2024- certified copy of transfer order , Certified Docket Sheet, Out of District Complaint ) (alns). (jmo). (Entered: 03/06/2024) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 06/09/2024 09:11:54 | | |
| **PACER Login:** | angelascott3 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:24-mj-00637-MSB |

# EXHIBIT B

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| _Zimnako Salah_ | ) |
| *Defendant* | ) |

Case No. _24 mj 637-msb_

## DETENTION ORDER

### Part I - Eligibility for Detention

Upon motion of: the Government, in a case involving an **enumerated offense**, 18 U.S.C. § 3142(f)(1); or the Government or Court, in a case involving a **serious flight risk**, 18 U.S.C. § 3142(f)(2)(A); or the Government or Court, in a case involving **serious obstruction risk**, 18 U.S.C. § 3142(f)(2)(B), the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II – Analysis under Section 3142(g) and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the Defendant must be detained pending trial because it finds:

☒ by clear and convincing evidence that the Defendant is a danger and that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community.

☒ by a preponderance of the evidence that there is a serious risk the Defendant would flee if released pending trial and that no condition or combination of conditions of release would reasonably assure the Defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

☒ Weight of evidence against the defendant is strong, but is the least important factor
☐ Subject to lengthy period of incarceration if convicted
☐ Prior criminal history or immigration history
☐ Participation in criminal activity while on probation, parole, or supervision
☐ History of violence or use of weapons
☐ History of alcohol or substance abuse
☐ Lack of stable employment
☐ Lack of stable residence
☐ Lack of financially responsible sureties
☐ Lack of significant community or family ties in this District or United States
☐ Significant family or other ties outside the United States
☐ Lack of legal status in the United States
☐ Subject to removal or deportation after serving any period of incarceration
☐ Prior failure(s) to appear in court as ordered
☐ Prior attempt(s) to evade law enforcement
☐ Use of alias(es) or false documents

**FILED**

FEB 2 3 2024

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  MYC        DEPUTY

OTHER REASONS OR FURTHER EXPLANATION:

_Has current carrying a loaded firearm charge set for trial_
_HAD a loaded firearm in this case —_

## Part III - Directions Regarding Detention

The defendant is remanded to the custody of the United States Marshal or their designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding. This order is entered without prejudice.

Dated: 2/23/24

Hon. Michael S. Berg
United States Magistrate Judge

# EXHIBIT C

UNCLASSIFIED

File Number:
Task ID:                                   1734084
Name of Audio File:           [See translation below]

<u>Participants</u>:
Zimnako Salah
Mary Mo Suliman
Haydar [LNU]

<u>Abbreviations</u>:
[ ]        Exegesis
[LNU] Last Name Unknown
[UI]      Unintelligible
MM        Mary Mo
ZS        Zimnako Salah

**Audio Session Number:**           **1 of 8**
**Source File Name:**                call_20240122;215258;04-062;95
**Duration:**                        **0:05:14**

(Translation starts here)
ZS asks MM how is she doing at home, and if the kids are doing fine. MM says that she is fine
and they are doing OK. ZS tells MM not to talk about anyone, just talk with each other. MS asks
if she talked to Kosrat, and if he is fine. MM says she did, and he said that [UI] will return on
Wednesday. MM asks ZS if God willing, ZS will come back in two days on Wednesday. ZS
says, no adding that there is a court to find out what is happening, and it is not like Slemani
where you go in and out. ZS says that God willing they will find out what will happen. MM says
that she can be the guarantor if needed. ZS explains that is how they do it in Slemani, but there is
no such thing here. ZS asks MM to look for the blueish red item placed in the room there, asking
MM not to mention its name. He tells MM that its handle has a plastic bag and asks MM not to
look at what is inside, but she should place it [possibly hide it] in a pot or something like that for
him. MM says she is in the room now, and ZS tells her that it is hanging on the wall next to it.
MM says there is nothing attached to it, but it has a small cap on it. ZS says that a white plastic
bag is attached to its handle, and asks MM if it is hanging on it, and MM responds in the
negative. ZS says that is very good, and asks if it has a pair of scissors on it. MM confirms that
there are grass clippers on it. ZS asks her to remove it and take it to the kitchen. ZS says MM
should look carefully again for the plastic bag and remove it, adding that it has something like
change of money in it, and he asks MM to hide it for him. MM says it's not there. ZS says it is
okay and she should not worry about it. ZS asks MM about Najibah [LNU] and how she is
doing. MM says that they all are doing fine and are asking about ZS and are worrying about him.
ZS asks her not to worry and to ask them to pray for him.
(End of translation)

1
UNCLASSIFIED

File Number:                 █████████
Task ID:                      1734084
Name of Audio File:        [See translation below]

**Audio Session Number:**       **3 of 8**
**Source File Name:**           **call_20240128;210504;05-008;98**
**Duration:**                     **0:11:06**

(Translation starts here)

MM tells ZS that she spoke to Haydar, who told her that if ZS just needs an address, then he would provide his own address. However, if ZS needs a place to stay, then he will rent a hotel room or a place that requires a contract, and they would charge $50 -$60 a day. ZS asks if Haydar would allow him to stay at his place, and MM asks if he will have to stay there. ZS says that he cannot come back to Arizona, adding that they would attach something to his ankle whereby he can move about in San Diego, and MM can come there adding that the place is not for MM. MM says she knows it is for ZS, adding that Haydar told her if ZS only needs the address, then he will provide his own address. However, if he needs a place to stay, then he will have to rent him a place. ZS says she should tell him that ZS does not need just the address, but a place to stay until his court date for 20 days or a few weeks, adding that he needs the address as a place where ZS will be living. ZS reminds MM not to call anywhere and not to give out any information, adding that whatever they ask her, she should say she does not know. ZS asks if she called Wisam, and MM says she did not call him. ZS asks her not to call the Kakayi guy, and he asks how she found him [Kakayi] and if he came to the house. MM asks if ZS is asking about Kamal, and ZS asks her not to mention his name, and confirms it is the Kakayi guy. MM says she called him [Kamal], and [UI] the number. ZS says that she should not be talking like that. MM further says that he [Kamal] told her that he does not want to get involved. ZS says that he [Kamal] is correct, and asks MM not to say anything or get involved.

ZS asks to find out from Haydar if he can stay at his place and not to tell him for two or three days because ZS is not sure how long it would take, and then MM should give Haydar the phone number of the girl [the public defender.] Haydar should tell her that he will be the guarantor for Zimnako and that ZS can stay at his place. ZS says that the public defender will input the information in the system and take care of the business telling them that ZS has a place and they will place an ankle bracelet so he can get out. Prior to getting out, ZS will contact MM to come there, and will see if Wisam or Haydar can come to pick MM up and bring her to their home. MM says that Saryas [LNU] told her that he can take her. ZS asks her if Saryas knows that ZS is in jail. MM says that she has not told him. ZS asks her where she saw Saryas. MM says that Azad Hama Salih gave her the phone number [to Saryas]. ZS asks if Azad is there, and MM says that Azad is in Virginia. She says that he gave her the number to contact him [Saryas].

ZS repeats his warning to MM by saying that she has no connection to his situation, adding that she would be just like a friend of him living at her own place and this happened to ZS and she is trying to help him out. <mark>He asks her not to let anyone into the house to search or inspect.</mark> ZS says that after she talked to Haydar and he agreed, then he gets in touch with his public defender and then he automatically gets out. He adds that it would cost about $2000-$3000 to get out. ZS tells her to wait until tomorrow to hear back from Haydar, if not, then she should call Wisam and tell him that Salah is still in jail and he should do something for him.  ZS tells MM to be strong,

UNCLASSIFIED

File Number:
Task ID:                        1734084
Name of Audio File:             [See translation below]

adding that he is in jail and everything is available to him. He tells her to call the public defender if she wants to get any updates about him, but she should not call any other places or offices. (End of translation)