MICHELE BECKWITH
Acting United States Attorney
SHEA J. KENNY
Assistant United States Attorney

    United States Attorney's Office
    501 I Street, Suite 10-100
    Sacramento, CA. 95814
    Telephone: (916) 554-2700
    shea.kenny@usdoj.gov

KATHLEEN WOLFE
Acting Assistant Attorney General, Civil Rights Division
CHRISTOPHER J. PERRAS
Special Litigation Counsel
SARAH HOWARD
Trial Attorney

    U.S. Department of Justice
    950 Pennsylvania Avenue NW,
    Washington, DC 20530
    Telephone: (202) 307-6962
    christopher.perras@usdoj.gov
    Telephone: (202) 353-5871
    sarah.howard2@usdoj.gov

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO.  2:24-CR-0043 DC-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION TO ADMIT OTHER ACTS EVIDENCE |
| v. | |
| ZIMNAKO SALAH, | MOTION HEARING: February 14, 2025<br>TRIAL: March 17, 2025<br>COURT: Hon. Dena Coggins |
| Defendant. | |

      The United States of America, by and through the undersigned attorneys, respectfully replies to Defendant Zimnako Salah's Opposition (ECF 49) to the Government's Motion to Admit Other Acts Evidence (ECF 47).  The Defendant's Opposition largely does not challenge that the other acts evidence is inextricably intertwined with the charged conduct and is offered for permissible purposes under Rule 404(b).

Rather, the Defendant offers two primary arguments, each unsupported by case law, for why the evidence nonetheless should be excluded: (1) that there are plausible innocent explanations for the Defendant's conduct, and (2) that the evidence would be prejudicial. As further discussed below, neither argument supplies a proper basis to exclude the evidence. The Defendant's explanations for his conduct are implausible, but even if they were credible, that is a question for the jury, not a basis for exclusion of otherwise admissible evidence. The Defendant's claim that the other acts evidence is prejudicial proves too little; Rule 403 bars evidence only if its probative value is *substantially outweighed* by *unfair prejudice*. The Defendant has not made this showing.

First, the Defendant asserts that there are plausible innocent explanations for his conduct. The partially completed improvised explosive device found in his storage unit? He was just heating up his food. The nails wrapped in duct tape and affixed to a propane tank with extruding electrical wires? Not shrapnel—just a handy way to store nails. The license plates the Defendant stole from Priuses in towns where he conducted his dry runs—the same license plates he later cut into pieces and asked his mother to hide from authorities after his arrest? "Not anything to do with this case." And those are the other acts for which the Defendant offers an explanation. He does not explain why he had repeatedly searched for videos depicting "infidels dying" and "ISIS killing people" and had watched a video titled "Does Qur'an say kill infidels wherever you encounter them?" And he does not explain why, as a non-Christian, he drove to a Christian church 11 hours from his home and tightly strapped a backpack around a church toilet. The government respectfully submits that the Defendant's explanations for his conduct are implausible and contradicted by other evidence, and that the "other act" evidence, when considered as a whole, demonstrates the Defendant's three-month plot to terrorize Christian churches. But even if reasonable minds could disagree on the meaning and significance of the other acts evidence, the jury would be the proper arbiter of that disagreement. It is well-established that the weight and significance of evidence, and the proper inferences to be drawn therefrom, is a "quintessential jury question"—not a basis to exclude evidence before trial—because "the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *C.V. v. City of Anaheim*, 823 F.3d 1252, 1256 (9th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Second, the Defendant asserts that the "other acts" evidence is prejudicial, but he does not explain why any of the evidence is *unfairly prejudicial* (i.e., spillover prejudice unrelated to its probative value), nor does he cite any case law in support of his argument or demonstrate how unfair prejudice *substantially outweighs* the considerable probative value of the evidence, the pertinent inquiry under Rule 403. The government respectfully submits that "other acts" evidence places the charged offenses in their proper context. If that prejudices the Defendant, it is only because the evidence, as a whole, proves his identity, intent, motive, and plan, and thus demonstrates his guilt.

For those reasons, the government respectfully seeks admission of the five categories of other acts evidence detailed in its Motion to Admit Other Acts Evidence (ECF 47).

## DRY RUN EVIDENCE

Evidence that the Defendant conducted dry runs at Christian churches in Southern California and Arizona is inextricably intertwined with evidence that, just weeks later, the Defendant committed the charged conduct in Roseville, California, and evidence that, the next week, the Defendant did the same thing at a Christian church in Colorado, because each of these incidents is part of the same overarching scheme that forms the basis of the criminal charges. Because evidence of the Defendant's dry runs provides the jury with the context necessary to understand the charged conduct and the motive behind it, it is inextricably intertwined with the charged conduct and should be admitted for that reason. Further, because the dry run evidence establishes the Defendant's identity and that he acted with the requisite criminal intent, and not by mistake or accident, when he strapped a backpack to a church toilet, the dry run evidence is independently admissible under Rule 404(b).

The Defendant concedes that the dry run evidence is probative of his identity, but he argues that it should be excluded, nonetheless, because "the evidence on identity is already overwhelming, and the defense does not plan to dispute the issue." ECF 49, at 5. But the Defendant claimed to the FBI that they got the wrong guy, and the government has the burden of proving identity beyond a reasonable doubt. And even if the defense were to stipulate to identity, that would not eliminate the probative value of the other acts evidence, which is admissible as intrinsic evidence and to prove things other than identity, such as motive, plan, absence of mistake, consciousness of guilt, and intent.

The Defendant acknowledges that the dry run evidence is probative of his intent, that "this case

GOVERNMENT'S REPLY ISO MOTION TO
ADMIT OTHER ACTS EVIDENCE

3

will be decided primarily on the issue of intent," and that his intent "is not easily proven by the events of November 12, 2023 alone." ECF 49 at 1, 5. That is precisely why the other acts evidence should be admitted. As the Supreme Court has instructed, other acts evidence is "critical to the establishment of the truth" and should be admitted where, as here, defendant's criminal intent is not readily inferred from his conduct. *Huddleston v. United States*, 485 U.S. 681, 685 (1988).

Finally, the Defendant argues that the fact that he did not plant a backpack at the church in La Mesa "suggests that he wasn't actually in the churches to drop off backpacks." ECF 49, at 4. This argument elides the reality that after the Defendant was caught trying to sneak into the children's area, he was tailed by security until he left the church. He would not have been able to plant a backpack and get away with it.

## BOMB EVIDENCE

Evidence that component parts of an improvised explosive device capable of fitting in a backpack were found in the Defendant's storage unit is plainly relevant to proving the Defendant's motive and intent in conducting dry runs by planting and attempting to plant backpacks in Christian churches over a three-month period. Indeed, the Defendant concedes that "without the bomb component, there is nothing for Mr. Salah to be conducting dry runs leading up to." ECF 49, at 3. For those reasons, the bomb evidence is inextricably intertwined with the charged offenses and admissible under Rule 404(b) to prove the Defendant's motive, intent, and plan, to carry out his plot.

The Defendant argues that each of the bomb components seized from his storage unit "had explanations that were unrelated to making bombs." ECF 49, at 2. This argument elides the reality that the bomb components were not found on their own; they were constructed together into an improvised device. There are innocent reasons to have a propane tank, electrical wires, duct tape, and nails, but, as the FBI's Explosives and Hazardous Device Forensic Expert will testify, the only plausible reason to run wires from a propane tank and then wrap it in nails and duct tape is to create a hoax device or a destructive device.

The Defendant argues that if the materials were bomb components, "he would have presumably wanted to keep them or take them with him for use in assembling a bomb later." ECF 49, at 3. If he had no heat on him, sure. But the Defendant had just been confronted by a police officer after behaving suspiciously at a Christian church in Colorado. At that point, the Defendant had a decision to make: drive home 13 hours across three states with an improvised device in his car, or ditch the device in a storage unit

15 minutes from the church. That the Defendant did not take the device with him back to Arizona does not mean that he did not intend to use it; it just means that he was spooked and afraid of being caught.

The Defendant argues that the improvised device he created was not a functional bomb because it lacked an initiator. ECF 49, at 2. That is true. Which is why he is not charged with possession of an unregistered destructive device, under 28 U.S.C. § 5861. But the absence of an initiator simply means either that the Defendant was still in the process of building the bomb, and had not yet built or purchased the initiator, or that the Defendant was building a hoax device to look like a bomb. Either way, the evidence is relevant. After all, the Defendant is charged with making a hoax bomb threat. ECF 37.

The Defendant argues that the bomb evidence is prejudicial. ECF 49, at 3. But Rule 403 is does not require exclusion of evidence that is simply prejudicial to the defendant's case; it bars evidence only if the risk of *unfair* prejudice *substantially outweighs* its probative value. Fed. R. Evid. 403 (emphasis added); *see also United States v. Mohr*, 318 F.3d 613, 619 (4th Cir. 2003) ("If believed, [the] evidence would, of course, severely damage Mohr's defense, but "[u]nfair prejudice under Rule 403 does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence.") (quoting 2 Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE, § 404.21[3][b]). The bomb evidence is not a "matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect," *United States v. Velazquez*, No. 22-50239, 2025 WL 251684, at *5 (9th Cir. Jan. 21, 2025); it is directly related to and inextricably intertwined with the charged conduct, and it provides key insight into the Defendant's motive, intent, and plot. The Defendant argues that the bomb evidence "significantly increases the level of the accusations" against him, but evidence of acts that, standing alone, may be offensive to the jury are consistently admitted when they are relevant to the charged crime. *See* ECF 47 at 21 (collecting cases regarding admission under Rule 403 of evidence of white supremacist views, pro-ISIS sympathies, incidents of domestic violence based on the probative value of the evidence). Nothing about this case warrants a different result.

**PLANNING EVIDENCE**

The Defendant "concedes that the prejudice created by admitting the evidence that Mr. Salah bought a motorcycle and a backpack is small, because there is nothing wrong or suspicious about having these items and the jury would learn he possessed them regardless." ECF 49, at 5. The Defendant

moves to exclude reference to the license plate "KAAB0M, which the defense believes is meant to mean 'Kaboom'" (i.e., an explosion). *Id.* at 6. The government will not argue or suggest to the jury that the motorcycle's license plate itself has anything to do with the Defendant's plot, but unless the Defendant stipulates to identity, the government does intend to use that license plate to prove that the Defendant was the masked man who planted a backpack at the Scottsdale church, as investigators used that license plate to connect the Defendant to the dry run at the Scottsdale church.

## CONCIOUSNESS OF GUILT EVIDENCE

The consciousness of guilt evidence—namely, that the Defendant attempted to conceal his location from law enforcement by switching license plates and using a stolen license plate; cutting up a hat and stolen license plates; asking his mother to hide evidence; and making false statements to federal agents—is admissible as direct evidence of the charged conduct, and it is further admissible under Rule 404(b) to prove that the Defendant knew that his conduct was illegal. *See* ECF 47 at 17-18.

The Defendant argues that his act of stealing license plants has "not anything to do with this case." ECF 49, at 6-7. The evidence demonstrates otherwise. Two of the three cut-up license plates were stolen from Toyota Priuses parked near Christian churches where the Defendant conducted dry runs on or about the dates he conducted those dry runs.[1] When the Defendant was arrested in Texas and California, he was driving with stolen license plates. A jury could reasonably infer from the foregoing evidence that the Defendant stole license plates from Priuses parked near churches where he conducted dry runs so he could avoid detection when driving home. It was not a perfect plan, but it made some sense: if an officer received a BOLO for a Prius with Arizona plates, the officer would have no reason to pull over the Defendant's Prius bearing in-state California or Colorado plates.

## MOTIVE EVIDENCE

Evidence of a defendant's "[m]otive is always relevant in a criminal case, even if it is not an element of the crime." *United States v. Hill*, 643 F.3d 807, 843 (11th Cir. 2011). That is "because a jury in a criminal case may not be satisfied to be shown who committed the crime, and how; it is likely to want to know why."

---

[1] The California license plate was stolen on or about November 2023 from a 2008 Prius in Sacramento, CA—18 miles from the church in Roseville, CA, where he conducted a dry run on November 12, 2023. The Colorado license plate was stolen on or about November 21, 2023, from a 2007 Prius in Glendale, CO—8 miles from the church in Greenwood Village, CO, where he conducted a dry run two days earlier.

Jones on Evidence § 17:51 (7th ed.). For that reason, evidence of the Defendant's religious extremism and anti-American animus is relevant evidence of his motive and intent to commit the charged crimes.

The Defendant mischaracterizes the encounter with the couple who bought his former home. ECF 49, at 7-8. The Defendant did not simply express academic disagreement with the Iraq war. He angrily confronted a man he was meeting for the first time, simply because the man was wearing an American flag hat, and shouted, "Fuck this country! I hate America! This country went to Iraq and killed a lot of people." The man and his wife were unsettled by the incident and became afraid of the Defendant. That is not a reaction typical of the "overwhelming majority of . . . Americans" who disagree with the Iraq war. Especially 20 years later. It is the reaction of a man with seething, explosive anger toward the United States. A common motive for terrorist attacks is retaliation against a government for perceived past injustices. A jury could reasonably infer that the Defendant's explosive anger toward the United States for killing his Iraqi countrymen was one of the Defendant's motives for plotting to commit a terror attack in America.

That some may find the Defendant's views toward America offensive is not a basis to exclude the evidence. *See United States v. Allen*, 341 F.3d 870, 886 (9th Cir. 2003) (explaining that "although prejudicial, the skinhead and other white supremacy evidence was not unfairly so and properly was admitted" to prove motive); *United States v. McInnis*, 976 F.2d 1226, 1232 (9th Cir. 1992) (holding that admission of items bearing swastikas was properly admitted "in light of its value in establishing" animus and identity) (citing *United States v. Skillman*, 922 F.2d 1370 (9th Cir. 1990); *United States v. Springer*, 753 F. App'x 821, 828-29 (11th Cir. 2018) ("The potential prejudicial value of references to [the defendant's] pro-ISIS sympathies is not lost upon us. But that evidence retains a sufficiently countervailing probative value given its importance in demonstrating [the defendant's] statements were 'true threats'…").

The Defendant argues that the phrase "Allah Muhammad" has no evidentiary value because it is a "common [phrase] repeated by nearly all Muslims." ECF 49, at 8. Had the Defendant uttered this phrase at a mosque, he would be right. But this was not a phrase the Defendant uttered innocently during religious services—it is a phrase he unlawfully spray-painted on the wall of his storage unit, just feet away from the bomb components. In order to fairly evaluate whether those components were simply tools to

heat his food and charge his phone, as the Defendant claims, or components of a bomb he was making, as the government contends, the jury deserves to get a clear picture of the place in which they were found.

The Defendant asserts that evidence of his YouTube search history has "minimal evidentiary value." ECF 49, at 8. But the fact that the Defendant viewed videos in which a bombing was carried out by concealing the bomb in a backpack is clearly probative to charges that the Defendant placed a hoax backpack bomb in a church bathroom. The Defendant asserts that it is normal for a Muslim man in America to be interested in Muslim terror attacks because such attacks might cause innocent Muslim people to be targeted in retaliation. But the Defendant did not simply click on a few links to keep up with the news; he searched dozens of times for videos depicting "infidels dying" and "ISIS killing people," he watched graphic videos of the murder of innocent civilians, and he watched videos discussing the morality of murdering non-Muslims, including a video titled "Does Qur'an say kill infidels wherever you encounter them?" The evidence is clearly probative of his motive and intent. *See United States v. Abu-Jihaad*, 630 F.3d at 133-34 (affirming conclusion that "pro-jihadist contents of the videos were relevant to understanding [the defendant's] motive and intent"); *United States v. Salameh*, 152 F.3d 88, 110-11 (2d Cir. 1998) (affirming admission of terrorist propaganda that "bristled with strong anti-American sentiment"); *United States v. Mehanna*, 735 F.3d 32, 60-61 (1st Cir. 2013) (ruling that videos the defendant "absorbed and endorsed" were admissible to establish that the defendant, "inspired by terrorist rants, developed an anti-American animus").

The Defendant argues, in the alternative, that evidence of his YouTube search history should be excluded because it would "unduly consume time and resources." ECF 49, at 8-9. To the contrary, the government estimates that it would take less than fifteen minutes to put on evidence of the Defendant's YouTube search history. If the Defendant wishes to "show the full extent of Mr. Salah's [YouTube] viewing habits," ECF 49, at 8-9, the Defendant is free to cross-examine the government's witness regarding the topic breakdown of his YouTube search history. The Defendant need not individually show each non-terrorism-related video in order to make this point, and indeed, the Rules of Evidence would preclude him from doing so as those videos are not relevant to the charged conduct.

As a strategic matter, the government is skeptical that the Defendant would pursue this avenue of cross-examination; after all, a significant portion of the Defendant's YouTube search history is searches

GOVERNMENT'S REPLY ISO MOTION TO
ADMIT OTHER ACTS EVIDENCE

8

for videos depicting sex with children and teenage boys. In a November 2024 meeting with defense counsel, the government flagged that issue and offered to use a stipulated exhibit to avoid exposing the jury to prejudicial evidence of the Defendant's apparent pedophilia. That offer remains open, but the Defendant cannot have it both ways. If he wants the jury to "properly understand what his media consumption looked like," he cannot shield the jury from the parts that make him look bad.

## CONCLUSION

For the foregoing reasons, the United States respectfully moves for a pretrial ruling that the five proffered categories of "other act" evidence are admissible.

Respectfully submitted,

MICHELE BECKWITH
Acting United States Attorney
Eastern District of California

 /s/ Shea J. Kenny
SHEA J. KENNY
Assistant United States Attorney

KATHLEEN WOLFE
Acting Assistant Attorney General
Civil Rights Division

 /s/ Christopher J. Perras & Sarah Howard
CHRISTOPHER J. PERRAS
Special Litigation Counsel
SARAH HOWARD
Trial Attorney

Attorneys for United States of America