MICHELE BECKWITH
Acting United States Attorney
SHEA J. KENNY
Assistant United States Attorney

United States Attorney's Office
501 I Street, Suite 10-100
Sacramento, CA. 95814
Telephone: (916) 554-2700
shea.kenny@usdoj.gov

HARMEET K. DHILLON
Assistant Attorney General, Civil Rights Division
CHRISTOPHER J. PERRAS
Special Litigation Counsel
SARAH HOWARD
Trial Attorney

U.S. Department of Justice
950 Pennsylvania Avenue NW,
Washington, DC 20530
Telephone: (202) 307-6962
christopher.perras@usdoj.gov
Telephone: (202) 353-5871
sarah.howard2@usdoj.gov

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:24-CR-0043 DC-1 |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR ACQUITTAL OR ALTERNATIVELY MOTION FOR NEW TRIAL |
| v. | |
| ZIMNAKO SALAH, | TRIAL: March 17, 2025 |
| Defendant. | COURT: Hon. Dena Coggins |

The United States of America, by and through the undersigned attorneys, respectfully opposes Defendant Zimnako Salah's Rule 29 Motion for Acquittal or Alternatively Rule 33 Motion for New Trial. ECF No. 99. Because the evidence presented at trial was more than sufficient for a rational jury to

find the essential elements of each crime and special finding beyond a reasonable doubt, and because the interests of justice do not require the Court to grant a new trial, the Motion should be denied.

## PROCEDURAL POSTURE

On February 29, 2024, a grand jury in the Eastern District of California returned a one-count indictment charging the Defendant with committing a hoax bomb threat at Bayside Church in Roseville, California, in violation of 18 U.S.C. § 1038(a)(l)(A), by affixing a backpack to a church toilet under circumstances leading church congregants to believe that backpack contained a bomb ("Count One"). ECF No. 1. On April 8, 2024, the Assistant Attorney General certified that the prosecution of the Defendant for a second offense—obstruction of the free exercise of religion, in violation of 18 U.S.C. § 247(a)(2)—was in the public interest and necessary to secure substantial justice. ECF No. 41. On July 25, 2024, the grand jury returned a superseding indictment adding a second count based on the same conduct: obstructing, or attempting to obstruct, the free exercise of religion, in violation of 18 U.S.C. § 247(a)(2) ("Count Two"). ECF No. 37. The superseding indictment included two special findings: (1) that Count Two included the threatened use of a dangerous weapon and explosives; and (2) that the Defendant intentionally selected the victims of Count Two because of their actual and perceived religion. *Id.* After an eleven-day trial, on April 3, 2025, a jury found the Defendant guilty of both charges. ECF No. 94. As to Special Finding 1, the jury found that the offense charged in Count Two did not include the threatened use of a dangerous weapon or explosives. *Id.* As to Special Finding 2, the jury found that the Defendant intentionally selected the victims because of their actual or perceived religion. *Id.*

## BACKGROUND

Federal Rule of Criminal Procedure ("FRCP") 29 provides that, on the Defendant's motion, the Court must enter a judgment of acquittal of any offense for which the evidence is "insufficient to sustain a conviction." FRCP 29(a), (c)(1). There is a two-step framework for determining whether evidence is sufficient to sustain a conviction. *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc) ("*Jackson* thus establishes a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). First, the Court must "consider the evidence presented at trial in the light most favorable to the prosecution." *Id.* at 1164. "This means that a court of appeals may not usurp the role of the finder of fact by considering how it

1  would have resolved the conflicts, made the inferences, or considered the evidence at trial"; rather, "a
2  reviewing court must presume—even if it does not affirmatively appear in the record—that the trier of
3  fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*
4  Second, the Court must determine whether the evidence, when viewed in the light most favorable to the
5  prosecution, "is adequate to allow *any* rational trier of fact [to find] the essential elements of the crime
6  beyond a reasonable doubt." *Nevils*, 598 F.3d at 1164 (internal quotations omitted) (emphasis in original).

7  FRCP 33 allows the Court to vacate any judgment and grant a new trial "if the interest of justice so
8  requires." FRCP 33(a). The Court may set aside the verdict and grant a new trial only "[i]f the court
9  concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence
10 preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have
11 occurred." *United States v. Alston*, 974 F.2d 1206, 1212 (9th Cir. 1992) (internal quotations omitted).

## ARGUMENT

13  For the reasons set forth below, the evidence presented at trial was more than sufficient to sustain
14 the Defendant's convictions and special finding, and the interest of justice does not require a new trial.

### A. Count One – 18 U.S.C. § 1038(a)(1)

16  Count One required the Government to prove the following three elements beyond a reasonable
17 doubt: (1) that the Defendant intentionally conveyed false information, specifically, that the backpack
18 contained a bomb; (2) that the false information was conveyed under circumstances where a reasonable
19 person could believe it; and (3) that the false information, if true, would have indicated that an activity had
20 taken, was taking, or would take place that would maliciously damage or destroy, by means of an
21 explosive, any building used in interstate commerce or in any activity affecting interstate commerce. *See*
22 Final Jury Instruction 19.

23  1. Element One of Count One

24  The Defendant admitted to strapping a backpack to a church toilet, and there was sufficient
25 evidence to support the jury's verdict that the Defendant, by doing so, "intentionally conveyed false or
26 misleading information, specifically, that the backpack contained a bomb." *See* Final Jury Instruction 19.
27  First, a rational jury could reasonably infer, from the Defendant's conduct at Bayside Church alone,
28 that he intentionally conveyed false information that the backpack contained a bomb. The Defendant

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION FOR ACQUITTAL OR
ALTERNATIVELY MOTION FOR NEW TRIAL

3

1  scoped out Bayside Church the day before he made the bomb threat, and the morning of the threat, he
2  conducted a walk-through of the church before bringing his backpack in from his car. *See* Ex. 14E
3  (Roseville Traffic Camera Video Clips (shortened and with halo effect) (11/11/2023 at 8:32 AM)); Ex.
4  14F (Roseville Traffic Camera Video Clips (shortened and with halo effect (11/11/2023 at 8:37 AM)); Ex.
5  57 (Bayside Church Compilation Video).  The Defendant then strapped the backpack to the toilet of a
6  highly-trafficked bathroom, and he never came back for the backpack—ensuring that churchgoers would
7  see it. *See* Ex. 3A (Photograph of Backpack).  The natural and probable consequence of leaving a
8  backpack strapped to an object in a high-traffic public area was that the backpack would be perceived as a
9  bomb, and the jury was properly instructed that it may infer that "the Defendant intended the natural and
10 probable consequences of acts he knowingly committed." Final Jury Instruction 19.

11         Second, a rational jury could have found Element One of Count One satisfied by the Defendant's
12 pattern of similar conduct at three other churches.  Witness testimony, photos, and surveillance video
13 showed that he planted a backpack in the auditorium of Scottsdale Bible Church, and that he brought
14 backpacks to Skyline Church and to Cherry Creek Presbyterian Church but was approached by security
15 before he could plant them. *See* Ex. 21A-C (Screenshots from Skyline Church Surveillance Video); Ex. 26
16 (Compilation of CCPC Surveillance Video); Ex. 28 (Body-Worn Camera Video of Captain K.H.); Ex.
17 33A-C (Screenshots of SBC Surveillance Video Sent to FBI); Ex. 36A-E (Photographs of Search of SBC
18 Backpack); Ex. 38 (Compilation of SBC Surveillance Video (with halo effect)). A jury could reasonably
19 infer, from evidence that the Defendant planted or attempted to plant backpacks at three Christian churches
20 in the weeks leading up to and following the charged incident, that the Defendant acted not by mistake or
21 accident, but with the intent to make a bomb threat.

22         Third, a rational jury could have found Element One of Count One satisfied by the Defendant's
23 partial assembly of an improvised explosive device capable of fitting into a backpack; by evidence that he
24 watched videos of the Boston Marathon bombing—a terrorist attack committed by Islamic extremists who
25 built homemade bombs, hid them in backpacks, and planted those backpacks in high-traffic public areas;
26 and by evidence that the Defendant searched for and watched ISIS propaganda videos depicting the
27 murder of "infidels"—a derogatory term used by Islamic extremists to describe non-Muslims.

28         Fourth, a rational jury could have found Element One of Count One satisfied by the Defendant's

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION FOR ACQUITTAL OR            4
ALTERNATIVELY MOTION FOR NEW TRIAL

false exculpatory statements to the FBI, which demonstrate his consciousness of guilt and show that his act of strapping a backpack to a church toilet was intentional and not an accident. In his recorded interview with FBI Special Agent Badr Elkhannoussi, the Defendant repeatedly denied that the backpack tied to the Bayside Church toilet belonged to him and that he was the man shown in the Bayside Church surveillance footage. *See generally* Ex. 40A-S (Clips 1-19 of Non-Custodial Interview of the Defendant). When confronted with a screenshot of the Bayside Church surveillance footage showing himself walking into the church carrying the backpack, the Defendant asserted first that 10 other people might look like him, and he then speculated that the FBI may have photoshopped the screenshot. *See* Ex. 40G (Clip 7 on Non-Custodial Interview of the Defendant); Ex. 40I (Clip 9 of Non-Custodial Interview of the Defendant). A rational jury could reasonably infer, based on common sense and Jury Instruction 10, that the Defendant's false statements to the FBI show his consciousness of guilt—specifically, that he knew that he did not leave the backpack strapped to the toilet for any innocent reason but rather intended to communicate a bomb threat.

Taken together, and viewed in the light most favorable to the prosecution, the evidence is sufficient to allow a rational trier of fact to find beyond a reasonable doubt that the Defendant intentionally conveyed false and misleading information that the backpack contained a bomb.

2. Element Two of Count One

There was sufficient evidence to support the jury's verdict that the false information (that the backpack contained a bomb) was conveyed under circumstances where a reasonable person could believe it. As explained above, a reasonable person could believe, based on current events, that a backpack left unattended and out of place—and specifically, tied to a toilet—could contain a bomb. Three reasonable people—J.W., J.D., and S.M.—credibly testified that they did, in fact, believe the backpack was a bomb, and they took appropriate actions to address the threat: they testified that they called 911 multiple times, *see also* Ex. 9 (911 call by J.W.); they evacuated a nearby classroom for special needs children; and they created (and later expanded) barriers to contain what they believed would be a blast radius, including closing off part of the church lobby, shutting down the church café, and evacuating an area typically reserved for high school students to gather. One of those witnesses, the head of security at Bayside's Adventure Campus, S.M., was a former law enforcement officer; a member of her security staff, J.W., had recently received training to recognize and address bomb threats; and the third witness, Executive Pastor

J.D., had no law enforcement experience or bomb training. The testimony of these three individuals, with varying level of experience identifying and addressing bomb threats, that they all believed the backpack was a bomb, is sufficient to allow a factfinder to determine that a reasonable person could believe the backpack contained a bomb.

    3. Element Three of Count One

There was sufficient evidence to support the jury's verdict that the false information, if true, would have indicated that an activity had taken, was taking, or would take place that would maliciously damage or destroy, by means of an explosive, any building used in interstate commerce or in any activity affecting interstate commerce.

There was abundant evidence supporting both parts of that element. First, had the false information been true—that is, had the backpack actually contained a functional bomb—the evidence is sufficient for a rational factfinder to find beyond a reasonable doubt that the bomb would have damaged the Bayside Church building. It is common sense that when bombs explode, they can injure people and damage property around them; that is what they are designed to do. The backpack was strapped to a toilet in the Bayside Church building. Had it contained a bomb, and had that bomb exploded, there is no question it would have inflicted property damage, at the very least. Second, the evidence at trial was likewise sufficient to support the jury's verdict that the Bayside Church building was used in interstate commerce. Bayside Church's Adventure Campus received online donations from at least nine different states in 2023 and donated funds to multiple interstate and international causes in 2023. *See* Ex. 41E (Adventure Campus Online Givers in 2023); Ex. 41F (Global – Ad 2023); Ex. 41I (Mexico Actual Rev & Exp – by Project). Further, the Bayside Church Adventure Campus is home to Adventure Christian School, which charged tuition, employed teachers and other staff members, and operated a café at the time of the charged incident. *See* Ex. 41A (AD Café 2023 Annual Sales); Ex. 41C (2023 ACS Gross Wages); Ex. 41D (ACS 2023 Student List).

In summary, the evidence was sufficient to prove each of the three elements of Count One beyond a reasonable doubt, so the Defendant's motion for acquittal under FRCP 29, and motion for a new trial under FCRP 33, should therefore be denied with respect to Count One.

**B. Count Two – 18 U.S.C. § 247(a)(2)**

Count Two required the Government to prove the following three elements beyond a reasonable

doubt: (1) that the Defendant, through a threat of force, obstructed or attempted to obstruct the congregants of Bayside Church in the enjoyment of their free exercise of religious beliefs; (2) that the Defendant acted intentionally; and (3) that the offense was in or affected interstate commerce. *See* Final Jury Instruction 20.

  1. Element One of Count Two

There was sufficient evidence to support the jury's verdict that the Defendant made a threat of force, and through that threat of force, obstructed or attempted to obstruct the congregants of Bayside Church in the enjoyment of their free exercise of religious beliefs.

The evidence was sufficient to show that the Defendant made a threat of force by strapping the backpack to the toilet and thereby communicated a bomb threat, which by its nature is a threat of force given that it is a threat of "physical force capable of causing physical pain or injury to another person." *See* Final Jury Instruction 21 (defining "force").  The same evidence that supports Element One of Count One, see Section A.1, *infra*, likewise establishes that the Defendant intended to communicate a threat. Further, the fact that another well-known bombing (the Boston Marathon bombing) was carried out through a homemade bomb concealed in a backpack and planted in a public place, and the fact that three witnesses at Bayside Church with widely varying levels of experience in addressing bomb threats all recognized the backpack to be a bomb threat—and acted accordingly—demonstrate that a reasonable person would consider the backpack to be a threat.

The evidence was further sufficient to show that through that threat of force, the Defendant obstructed the congregants of Bayside Church in the enjoyment of their free exercise of religious beliefs. S.M. testified that she learned about the threat while she was worshiping with her husband during Bayside Church's first of two services scheduled that Sunday. Rather than continuing to worship, she left the church service to address the threat. Further, witnesses testified that a nearby classroom for special needs children was evacuated, and the class was not able to meet during Bayside Church's second service. Each of the families who would have otherwise relied on the special needs class for childcare during the second service was, like S.M., obstructed in their free exercise of religion. Based on the interruption to S.M. and the children and families who could not participate in their usual class, a rational factfinder could conclude that the Defendant, through a threat of force, obstructed those individuals in the enjoyment of their free exercise of religious beliefs.

Alternatively, a rational jury could have concluded that the Defendant *attempted* to obstruct those individuals and the Bayside Church congregation in the free exercise of their religion. Final Jury Instruction 21. As explained in further detail in Section B.2, *supra*, the evidence shows that the Defendant had the intent to commit the completed crime of religious obstruction. The evidence also shows that the Defendant took a substantial step toward committing the crime: he strapped the backpack to the toilet.

A rational jury could therefore find, based on the evidence, that the Defendant actually succeeded in obstructing, through a threat of force, the congregants of Bayside Church in their free exercise of religion, or alternatively, that he attempted to do so.

### 2. Element Two of Count Two

There was sufficient evidence to support the jury's verdict that the Defendant did so intentionally. The supporting evidence of the Defendant's intent, outlined in Section A.1, *infra*, likewise establishes that the Defendant acted intentionally with respect to Count Two. A rational jury could reasonably infer from that evidence, from the timing of the threat—that the Defendant planted the backpack at the very time that the church would be at its highest capacity of the week—and from the fact that the natural and probable consequence of a bomb being in a church is that the services will be disrupted, that the Defendant intended to obstruct the churchgoers in their free exercise of religion.

### 3. Element Three of Count Two

Element Three of Count Two required proof that the offense was "in" or "affected" interstate commerce. The phrase "interstate commerce" means the movement or transportation or flow of goods, merchandise, money, or other property in commerce between or among the states or between the United States and a foreign country. Final Jury Instruction No. 23. An offense is "in" interstate commerce if the Defendant used a channel or an instrumentality of interstate commerce to complete an indispensable step in committing the offense—including not only the offense itself, but traveling to the site where the offense was committed and procuring the materials to commit the offense. *Id.* Channels of interstate commerce are the interstate transportation routes through which persons and goods move, including interstate highways, while instrumentalities of interstate commerce are the people and things themselves moving in interstate commerce, including cars and goods that were purchased in one state and shipped from another state or country. *Id.* An offense "affected" interstate commerce if it in any way involved, interfered with, changed,

or altered the movement or transportation or flow of goods, merchandise, money, or other property in commerce between or among the states or between the United States and a foreign country. *Id.*

There was sufficient evidence to support the jury's verdict that the offense was "in" or "affected" interstate commerce. The backpack the Defendant used to communicate his bomb threat was made in China and shipped in interstate commerce, which means that the Defendant used an instrumentality of interstate commerce to commit the offense. *See* Ex. 3F (Photograph of Backpack). The trial evidence likewise established that the Defendant used a car and an interstate highway—an instrumentality and channel of interstate commerce, respectively—to complete the indispensable step of traveling to Bayside Church to commit the offense. *See* Ex. 57 (Bayside Church Compilation Video). Further, there was ample evidence to support the alternative finding that the offense "affected" interstate commerce. Witnesses testified that, as a result of the safety perimeter constructed around the bathroom, the church café—which had been open and selling goods and receiving payment prior to the bomb threat—was shut down. Because the bomb threat shut down the café, it altered the movement of goods and money in commerce and therefore "affected" interstate commerce.

Because the evidence was sufficient to prove each of the three elements of Count Two, the Defendant's motion for a judgment of acquittal under FRCP 29, and alternative motion for a new trial under FRCP 33, should be denied with respect to Count Two.

4. <u>Special Finding Two</u>

There was sufficient evidence to support the jury's special finding that the Defendant intentionally selected the congregants of Bayside Church because of their religion. The special finding requires proof of two elements: (1) that the Defendant acted with animus, bias, or hostility toward the targeted religion; and (2) that the Defendant would not have strapped a backpack to the toilet of Bayside Church but for the actual or perceived religion of the attendees or congregants worshipping there. *See* Final Instruction 25.

The evidence showed that the Defendant acted with anti-Christian bias and would not have strapped the backpack to the toilet of Bayside Church but for the fact that it is a Christian church. The evidence established that over a three-month period, the Defendant planted backpacks, or attempted to plant backpacks, at four Christian churches in three different states. The Defendant did not target any non-religious properties, such as schools or government buildings, nor did he target houses of worship of other

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR ACQUITTAL OR ALTERNATIVELY MOTION FOR NEW TRIAL

9

religious faiths. The Defendant solely targeted Christian churches. The Defendant had no personal connection to those churches or the people who worshipped there. This pattern of targeting Christian churches evidences the Defendant's bias and hostility toward Christianity, as does the fact that the Defendant searched on YouTube for "infidels dying" and the fact that in his FBI interview, the Defendant described tenets of Christianity as "blasphemy." *See* Ex. 60A (Excerpt from YouTube Search Warrant Returns); Ex. 40R (Clip 18 of Non-Custodial Interview of the Defendant). Based on this evidence, a rational factfinder could conclude that the Defendant acted with animus toward Christianity and that he would not have strapped the backpack to the toilet of Bayside Church but for the church's religion.

## CONCLUSION

For the foregoing reasons, the United States respectfully submits that the Defendant's FRCP Rule 29 Motion for Acquittal or Alternatively FRCP Rule 33 Motion for New Trial should be denied.

Respectfully submitted,

MICHELE BECKWITH
Acting United States Attorney
Eastern District of California

/s/
SHEA J. KENNY
Assistant United States Attorney

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

/s/
CHRISTOPHER J. PERRAS
Special Litigation Counsel
SARAH HOWARD
Trial Attorney

Attorneys for United States of America