ERIC GRANT
United States Attorney
SHEA J. KENNY
Assistant United States Attorney

    United States Attorney's Office
    501 I Street, Suite 10-100
    Sacramento, CA. 95814
    Telephone: (916) 554-2700
    shea.kenny@usdoj.gov

HARMEET K. DHILLON
Assistant Attorney General, Civil Rights Division
CHRISTOPHER J. PERRAS
Special Litigation Counsel
SARAH HOWARD
Trial Attorney

    U.S. Department of Justice
    950 Pennsylvania Avenue NW,
    Washington, DC 20530
    Telephone: (202) 307-6962
    christopher.perras@usdoj.gov
    Telephone: (202) 353-5871
    sarah.howard2@usdoj.gov

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>      v.<br><br>ZIMNAKO SALAH,<br><br>                Defendant. | CASE NO. 2:24-CR-0043 DC-1<br><br>GOVERNMENT'S FORMAL RESPONSE TO PRESENTENCE REPORT<br><br>SENTENCING HEARING: November 7, 2025<br>COURT: Hon. Dena Coggins |

      The United States of America, by and through the undersigned attorneys, hereby files this formal response ("Response") to the Presentence Investigation Report ("PSR") filed in the above-captioned case. ECF 113.

GOVERNMENT'S FORMAL RESPONSE TO PRESENTENCE REPORT

The United States agrees with the majority of the guidelines calculations in the PSR. Specifically, the United States agrees that Defendant Salah's offense Guideline is § 2A6.1; that his base offense level is 12; that a four-level increase for substantial disruption of public services applies under § 2A6.1(b)(4)(A); that a three-level hate crime enhancement applies under § 3A1.1(a); that a thirteen-level terrorism enhancement applies under § 3A1.4; that a two-level obstruction enhancement applies under § 3C1.1; and that his Guideline range is 72 months in prison. In Section I of this Response, the United States respectfully submits that one additional specific offense characteristic applies: a six-level increase for intent to carry out the threat under § 2A6.1(b)(1). Application of this specific offense characteristic would increase Defendant Salah's total offense level to 41, but, for the reasons set forth in PSR ¶96, it would not change his ultimate Guideline range of 72 months in prison. In Sections II and III of this Response, the United States offers additional evidence and argument in support of the terrorism and obstruction enhancements recommended in the PSR, and, to ensure a clear record, respectfully requests this information be included in the PSR.

## I.    Specific Offense Characteristic: Intent to carry out the threat

Section 2A6.1(b)(1) of the Guidelines provides for a six-level increase to the Guideline for Threatening or Harassing Communications, "If the offense involved any conduct evidencing an intent to carry out such threat." U.S.S.G. § 2A6.1(b)(1). In determining whether this specific offense characteristic should be applied, "the court shall consider both conduct that occurred prior to the offense and conduct that occurred during the offense." *Id.* Application Note 1. Evidence of a defendant's intent to carry out a threat includes, but is not limited to, (1) evidence that a defendant had made a list of targets and other statements corroborative of his intent, *United States v. Spangle*, 281 F. App'x 693, 694 (9th Cir. 2008) ("In light of the lists found in Spangle's cell and the letters to the probation officer targeted in the list, the district court's finding was not clearly erroneous."); (2) evidence that a defendant had acquired weapons, *United States v. Dugan*, 232 F. App'x 698, 699 (9th Cir. 2007) ("[T]he district court did not clearly err in finding that Dugan engaged in conduct evidencing an intent to carry out a threat. Dugan stipulated to the fact that before threatening to "shoot[ ] the pipes and machinery in an attempt to shut down production" at Intel Corporation, he purchased an AK-47 assault rifle. . . . along with 1000 rounds of ammunition and four magazines for that weapon."), and (3) evidence that a defendant had traveled to the targeted location, *United States v. Hines*, 26 F.3d 1469, 1473–74 (9th Cir. 1994) ("Hines's theft of a .357 magnum and trip

to Washington, D.C. to kill President Bush are too relevant to ignore."). As the Ninth Circuit has instructed: "The purpose of the enhancement is clear: Defendants who act on their threats are more dangerous, and therefore, deserve more punishment. The critical issue should not be the timing of the conduct, but whether the conduct shows the defendant's intent and likelihood to carry out the threats." *Hines*, 26 F.3d at 1473.

Defendant Salah's conduct leading up to the offense of conviction demonstrates his intent to carry out his threat to bomb a Christian church. On September 24, 2023, six weeks before the Defendant planted a backpack at the Bayside Church, he planted a backpack at a Christian church in Scottsdale, Arizona. PSR ¶51. On his way out, the Defendant stole a Bible, which was later found in his home, with the following passage underlined: "Bring here those enemies of mine, who did not want me to reign over them, and slay them before me." USA Trial Exhibit 58O. Two weeks later, on October 7, 2023, the Defendant rented a storage unit in Denver, Colorado, where the FBI later recovered bomb components: propane gas tanks with protruding electrical wires connected to batteries and duct-taped nails functioning as shrapnel. PSR ¶57; USA Trial Exhibits 46 (storage unit rental agreement); 49D-F, I-U (photographs of bomb components recovered from the storage unit). FBI Explosives Unit Forensic Examiner Joshua Michaels testified at trial that the components seized from the storage unit were improvised explosive device components. Those bomb components, when re-assembled, were capable of fitting into a backpack. Defendant's YouTube history included several videos about the Boston Marathon bombing: an attack committed by terrorists who constructed improvised explosive devices, concealed them in backpacks, and planted those backpacks in a public place. PSR ¶66; USA Trial Exhibit 60D. On November 10, 2023, two days before the Defendant planted a backpack at the Bayside Church, he took a cellphone video of himself preparing to plant a backpack at a Christian church in San Francisco. PSR ¶63. On that video, Defendant Salah pointed to an American flag and said, "Fuck that flag," and "America—we're going to destroy it." PSR ¶63. His statements on that video are consistent with statements he made to others during the same period, including, "fuck this country," "America gets what it deserves," and "there will be more to come." PSR ¶38-39. The totality of the evidence, when considered together, shows that when the Defendant strapped a backpack around the Bayside Church toilet, he was not making an isolated, idle threat; he was committing a dry run in furtherance of his greater plot to bomb a Christian church—

GOVERNMENT'S FORMAL RESPONSE TO PRESENTENCE REPORT

demonstrating his intent to carry out the threat.  Accordingly, the government respectfully submits that a six-level increase to the Defendant's base offense level should be applied under 2A6.1(b)(1).

## II.   Terrorism enhancement

The United States agrees with the PSR that a thirteen-level terrorism enhancement applies under § 3A1.4, PSR ¶31, and hereby offers further evidence and argument in support of that enhancement, and requests this additional evidence be included in the PSR.

Section 3A1.4 of the Guidelines (Terrorism) provides: "(a) If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32; and (b) "in each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI." U.S.S.G. § 3A1.4. "For purposes of this guideline, 'federal crime of terrorism' has the meaning given that term in 18 U.S.C. § 2332b(g)(5)." *Id.* Application Note 1.  Section § 2332b(g)(5) defines "federal crime of terrorism" as "an offense that—(A) is calculated  to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and (B) is a violation of" one of the enumerated federal terrorism statutes, including, as relevant here, "844(i) (relating to arson and bombing of property used in interstate commerce) of Title 18. 18 U.S.C. § 2332b(g)(5).  Due process requires "that the government prove the facts underlying the [terrorism] enhancement by clear and convincing evidence." *United States v. Tankersley*, 537 F.3d 1100, 1106 (9th Cir. 2008).

The phrase "involved, or was intended to promote" reflects that the terrorism enhancement applies not only where a defendant is convicted of a federal crime of terrorism, but also where, as here, the defendant's crime of conviction involved a federal crime of terrorism, or was intended to promote a federal crime of terrorism. *United States v. Awan*, 607 F.3d 306, 313–14 (2d Cir. 2010). "[A] defendant's offense 'involves' a federal crime of terrorism when his offense includes such a crime, *i.e.*, the defendant committed, attempted, or conspired to commit a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5), or his relevant conduct includes such a  crime." *Id.*; *see also United States v. Arnaout*, 431 F.3d 994, 1001 (7th Cir. 2005) ("[T]he word 'involved,' as used in § 3A1.4, signifies that where a defendant's offense or relevant conduct includes a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5)(B), then § 3A1.4 is triggered.").  A defendant's offense is "intended to promote" a federal

crime of terrorism if it "is intended to encourage, further, or bring about a federal crime of terrorism, even though the defendant's own crime of conviction or relevant conduct may not include a federal crime of terrorism." *Awan*, 607 F.3d at 314; *United States v. Graham*, 275 F.3d 490, 516 (6th Cir. 2001) ("A defendant who intends to promote a federal crime of terrorism has not necessarily completed, attempted, or conspired to commit the crime; instead the phrase implies that the defendant has as one purpose of his substantive count of conviction or his relevant conduct the intent to promote a federal crime of terrorism."); *Arnaout*, 431 F.3d at 1002 ("[T]he word 'promote,' as used in § 3A1.4, signifies that where a defendant's offense or relevant conduct helps or encourages a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5)(B), then § 3A1.4 is triggered.").

The terrorism enhancement "does not require proof of a defendant's particular motive"; it focuses "not on the defendant, but on his 'offense,' asking whether it was calculated, *i.e.*, planned—for whatever reason or motive—to achieve the stated object." *Awan*, 607 F.3d at 317, *cited with approval by United States v. Alhaggagi*, 978 F.3d 693, 700 (9th Cir. 2020); *see also United States v. Jayyousi*, 657 F.3d 1085, 1115 (11th Cir 2011). For example, "a person who murders a head of state, for instance, sure in the knowledge that his crime will influence or affect the conduct of government, satisfies the terms of § 2332b(g)(5)(A) even if his particular motivation in committing the murder is to impress a more established terrorist with his abilities." *Awan*, 607 F.3d at 317 (emphasis in original).

The terrorism enhancement applies in this case because Defendant Salah was convicted in Count One of making a hoax bomb threat—a felony—that involved and was intended to promote a violation of § 844(i)—an enumerated federal crime of terrorism—and was calculated to retaliate against the United States government. PSR ¶31.

<u>Felony</u>.  Count One is a felony punishable by a maximum of five years of imprisonment.  See 18 U.S.C. § 1038(a)(1)(A); ECF 37 (penalty sheet).

<u>Involving or Intending to Promote a Federal Crime of Terrorism</u>.  The predicate offense charged in Count One, for which Defendant Salah was convicted, is "Title 18, United States Code, Section 844(i)," which makes it a crime to bomb a building used in interstate commerce. ECF 37.  That predicate offense is a federal crime of terrorism, enumerated in 18 U.S.C. § 2332b(g)(5).  Thus, Count One both "involved" and was "intended to promote" a federal crime of terrorism.  *See United States v. Graham*, 275 F.3d 490,

518 (6th Cir. 2001) (affirming application of terrorism enhancement to defendant who was not convicted of violating § 844(i) but was convicted of conspiring to violate § 844(i), concluding that the defendant's conspiracy conviction was "intended to promote" that federal crime of terrorism).

<u>Calculated to Retaliate Against Government Conduct</u>.  The evidence at trial, and additional evidence recovered from Defendant Salah's cellphone after trial, establish that Defendant Salah's planned attack was motivated in part by his hatred of America and desire to retaliate against American military action and foreign policy in the Middle East.  A cellphone video, dated November 10, 2023—two days before the crimes of conviction in Roseville, California—shows Defendant Salah outside a Christian church in San Francisco, California, with a black backpack. PSR ¶63.  Defendant Salah points to an American flag and says, "Fuck that flag," and "America—we're going to destroy it." PSR ¶63. His statements on that video are consistent with statements he made to another witness, A.R., months earlier.  When Defendant Salah observed A.R. wearing a hat with the American flag on it, Defendant Salah exclaimed "fuck this country" and "I hate America," elaborating that he was angry with the U.S. military for bombing and killing Iraqis. PSR ¶38. In many countries, including Defendant Salah's native Iraq, anger at U.S. military action in the Middle East has led religious extremists to join or support terrorist groups like ISIS.  A review of Defendant Salah's YouTube search history indicated that he had searched for and watched graphic videos depicting the murder of "infidels" (a derogatory term for non-Muslims) by ISIS. PSR ¶66.   The foregoing evidence demonstrates that the Defendant's offense was calculated to retaliate against government conduct.  *See United States v. Blanco*, 102 F.4th 1153, 1161 (11th Cir. 2024) (affirming application of terrorism enhancement predicated on evidence that defendant acted "in retaliation for the United States['] public support of Israel and [its] invasion of Afghanistan and Iraq").

That Defendant Salah chose to retaliate against America by bombing Christian churches, rather than government buildings or military bases, does not alter that conclusion.  In *United States v. Alowemer*, 96 F.4th 386, 389 (3d Cir. 2024), the defendant, who was convicted of plotting to bomb a Nigerian-American church in Pittsburgh, argued that the terrorism enhancement did not apply because, according to him, "he intended only to harm and frighten Christians, not to influence government conduct," and he "targeted civilians and a church, not government officials or buildings."  The district court rejected that argument, finding that one of the defendant's goals, in plotting the attack, was to get revenge against the U.S. military for "invading the

Middle East." *Id.* The district court applied the terrorism enhancement on that basis, and the Third Circuit affirmed. *Id.* The same reasoning supports application of the terrorism enhancement in this case.

For all of those reasons, the United States respectfully submits that the terrorism enhancement applies. The United States also argues, in the alternative, that an upward departure, at the very least, would be warranted, under Application Note 4 of the terrorism enhancement, because Defendant Salah's "terrorist motive was to intimidate or coerce a civilian population." U.S.S.G. § 3A1.4 Application Note 4. The Defendant was convicted of intentionally conveying a bomb threat, in violation of 18 U.S.C. § 1038, conduct that, by its very nature, is designed to intimidate a civilian population. *See United States v. Jordi*, 418 F.3d 1212, 1217 (11th Cir. 2005) (ruling that district court erred in not applying an upward departure, under Note 4 of the terrorism enhancement, because "defendant sought through his actions to intimidate or coerce a civilian population by fire bombing" an abortion clinic).

The Defendant's terrorist motive and greater terrorist plot distinguishes this case from a run-of-the-mill hoax threat case where a defendant lashed out in a one-time fit of rage or bout of intoxication. The Defendant wanted to "destroy" America by bombing Christian churches, and he built a bomb and conducted dry runs at Christian churches in furtherance of that attack. His sentence should reflect the gravity of his plot. *United States v. Ressam*, 679 F.3d 1069, 1090 (9th Cir. 2012) (en banc) (ruling that district court's sentence for a terrorist who plotted to bomb an airport was substantively unreasonable in part because "[t]he Sentencing Guidelines specifically provide for a substantial upward adjustment for federal crimes of terrorism" and "[t]he sentence imposed by the district court effectively negated that adjustment.").

### III. Obstruction enhancement

The United States agrees with the PSR that a two-level obstruction enhancement applies under § 3C1.1, PSR ¶33, and respectfully submits that there are five independent grounds upon which to apply it.

First, Defendant Salah committed perjury by lying under oath throughout his trial testimony. For perjury to be deemed obstruction, the Court must make specific factual findings that: "(1) the defendant gave false testimony, (2) on a material matter, (3) with willful intent." *United States v. Garro*, 517 F.3d 1163, 1171 (9th Cir. 2008). As detailed below, the evidence supports all three findings. At trial, the Defendant falsely claimed under oath that he strapped a backpack to a Bayside Church toilet to support his lower back, and that he left the church without the backpack because his zipper was stuck and he

urgently needed to go to the bathroom. The Defendant's story was ridiculous on its face, contradicted by the evidence, and rejected by the jury. It was one of many lies the Defendant told during two days of trial testimony. When confronted with surveillance video from the Scottsdale Bible Church showing the Defendant planting a backpack, taking a Bible, and leaving the church, the Defendant claimed that he forgot his backpack by accident and that the Bible he took from the church pew actually belonged to him. When confronted with items seized from his storage locker that FBI experts testified were bomb components—an improvised electrical circuit with 9-volt batteries duct-taped to a propane tank wrapped with shrapnel—the Defendant claimed that the items were simply an improvised phone charger. When confronted with his searches for YouTube videos depicting the graphic murder of "infidels" by ISIS, the Defendant claimed that he watched those videos simply to confirm that there were no Iraqis in them. The Defendant had a constitutional right to testify in his own defense, but his "right to testify [did] not include a right to commit perjury," and the obstruction enhancement is warranted because "a defendant who commits a crime and then perjures herself in an unlawful attempt to avoid responsibility is more threatening to society and less deserving of leniency than a defendant who does not so defy the trial process." *United States v. Dunnigan*, 507 U.S. 87, 96 (1993); *see also United States v. Sullivan*, 797 F.3d 623, 642 (9th Cir. 2015). Second, Defendant Salah destroyed evidence material to the federal investigation. During a search of his vehicle, federal agents found a bag with cut-up pieces of a black hat. PSR ¶15-¶16. When pressed on cross-examination, the Defendant admitted that it was the same black hat he wore to Bayside Church and that he was the one who cut it up. During a search of his home, agents found a bag with cut-up pieces of three license plates. PSR ¶15. Further investigation revealed that those three license plates had been stolen from Toyota Priuses in Sacramento, California, Dallas, Texas, and Glendale, Colorado, during the three-month period the Defendant traveled through those areas and planted, or attempted to plant, backpacks at Christian churches. For that reason, they were material to the investigation. *See United States v. Vela-Salinas*, 677 F. App'x 224, 232 (6th Cir. 2017) (affirming application of the obstruction enhancement predicated on defendant's order to destroy license plates associated with vehicles used during the criminal conspiracy).

Third, Defendant Salah directed his mother to conceal evidence material to the federal investigation. On January 22, 2024, the Defendant called his mother from jail and asked her to hide

evidence from authorities. That call was recorded, translated from Kurdish to English, and transcribed. (The translated transcript of that call is available at ECF 86, Exhibit F.) Knowing the call was recorded, the Defendant used coded language and instructed his mother "do not talk about the thing" and "do not mention its name." The Defendant told his mother that he wanted her to hide "a bag" hanging on "the wall side" of "the handle" of something in "the room." When his mother could not find it, he elaborated that the object "has a cover on it" and "a pair of scissors on it." The Defendant was describing a bag holding cut-up license plates, which federal agents found hanging from the wall-side handlebar of his red and blue motorbike, which had a cover on it and a shears clipped to the front. ECF 86, Exhibit G. The Defendant's directive to his mother to hide evidence from authorities warrants application of the obstruction enhancement. *See United States v. Shipley*, 777 F. App'x 203, 205 (9th Cir. 2019) (affirming application of obstruction enhancement based on "clear evidence of an obstruction of justice in this case, particularly in the request made by the defendant [to] his wife to secrete or hide or get rid of the firearm that was at the premises.").

Fourth, Defendant Salah concealed evidence material to the federal investigation by refusing, on two separate occasions, to permit federal agents to execute a court order to collect his DNA. The Ninth Circuit has held that a defendant's "failure to comply with a court order is grounds to apply the [obstruction] enhancement," *United States v. Malveaux*, 208 F.3d 223 (9th Cir. 2000), and other courts have applied the obstruction enhancements to a defendant's refusal to comply with a court order to provide DNA, *e.g.*, *United States v. Clark*, 382 F. Supp. 3d 1, 29–30 (D.D.C. 2019) (applying obstruction enhancement where, as here, defendant twice refused to comply with court order to provide his DNA). That agents eventually collected his DNA, on the third try, is irrelevant to this analysis because the obstruction enhancement covers both obstruction and attempted obstruction. *United States v. Sayetsitty*, 107 F.3d 1405, 1410 (9th Cir. 1997) ("The prosecution was not required to prove that Larry actually obstructed justice; a showing of attempt is sufficient to warrant the two-level increase."). Defendant Salah's DNA was material to the investigation because FBI testing later confirmed that his DNA matched DNA found on the backpack planted at Bayside Church and the bomb components in the Defendant's storage locker.

Fifth, during a voluntary interview on November 21, 2023, one week before his arrest, Defendant Salah provided several materially false statements to FBI Agent Badr Elkhannoussi that significantly

obstructed the federal investigation. The Defendant claimed that he never left his backpack in the Bayside Church; that the backpack strapped to the toilet of the Bayside Church was not his; and that he never went to a church in Colorado. PSR ¶44-¶46; USA Trial Exhibits 40C-L, O, P. When pressed on cross-examination, Defendant Salah admitted that he made false statements to the FBI, that he knew at the time they were false, and that he made them to avoid getting in trouble. The defendant's lies to the FBI significantly obstructed the federal investigation by causing the FBI to devote substantial additional time and resources, including DNA testing, to the investigation. *See United States v. Nair*, 40 F. App'x 517, 519 (9th Cir. 2002) ("Nair willfully hindered the FBI's investigation with the purpose of obstructing justice by providing the FBI with numerous false statements, continuing to deny her involvement, and causing the FBI to conduct substantial additional investigation.").

For all of those reasons, the United States agrees with the PSR that the obstruction enhancement is warranted in this case and requests the Court make the specific findings—with respect to Salah's perjured testimony—that Salah (1) the defendant gave false testimony, (2) on a material matter, (3) with willful intent. *See Garro*, 517 F.3d at 1171.

Respectfully submitted,

ERIC GRANT
United States Attorney
Eastern District of California

_____/s/_____
SHEA J. KENNY
Assistant United States Attorney

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

_____/s/_____
CHRISTOPHER J. PERRAS
Special Litigation Counsel
SARAH HOWARD
Trial Attorney

Attorneys for United States of America

GOVERNMENT'S FORMAL RESPONSE TO PRESENTENCE REPORT