ERIC GRANT
United States Attorney
SHEA J. KENNY
Assistant United States Attorney

    United States Attorney's Office
    501 I Street, Suite 10-100
    Sacramento, CA 95814
    Telephone: (916) 554-2700
    shea.kenny@usdoj.gov

HARMEET K. DHILLON
Assistant Attorney General, Civil Rights Division
U.S. Department of Justice
CHRISTOPHER J. PERRAS
Special Litigation Counsel
SARAH E. HOWARD
Trial Attorney

    U.S. Department of Justice
    950 Pennsylvania Avenue NW,
    Washington, DC 20530
    Telephone: (202) 307-6962
    christopher.perras@usdoj.gov
    Telephone: (202) 353-5871
    sarah.howard2@usdoj.gov

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>      v.<br><br>ZIMNAKO SALAH,<br><br>                Defendant. | CASE NO. 2:24-CR-0043 DC-1<br><br>GOVERNMENT'S SENTENCING MEMORANDUM<br><br>SENTENCING DATE: Nov. 7, 2025<br>TIME: 9am<br>COURT: Hon. Dena Coggins |

      For the reasons set forth in this sentencing memorandum, the United States of America, by and through its undersigned counsel, respectfully recommends that Defendant Zimnako Salah be sentenced to 72 months of imprisonment.

# I.    **BACKGROUND**

After a three-week trial, a jury convicted Defendant Salah of making a hoax bomb threat targeting a Christian church and thereby obstructing the religious free exercise of its congregants, in violation of 18 U.S.C. § 1038 and § 247. ECF 73, 77-79, 82, 85, 89, 91-94, 96.  The evidence at trial established that the crimes of conviction were part of Defendant Salah's three-month plot to bomb a Christian church, which included constructing an improvised explosive device capable of fitting in a backpack, and conducting "dry runs" by planting or attempting to plant backpacks in Christian churches in Arizona, California, and Colorado.   A cellphone video discovered by federal authorities after trial shows Defendant Salah outside of another Christian church, two days before the crimes of conviction, declaring, "America. We're going to destroy it." Presentence Report ("PSR"), ECF 113, at ¶ 63.

# II.    **SENTENCING GUIDELINES**

## A.    **Presentence Report**

The PSR concludes that Defendant Salah's offense Guideline is § 2A6.1; that his base offense level is 12; that a four-level increase for substantial disruption of public services applies under § 2A6.1(b)(4)(A); that a three-level hate crime enhancement applies under § 3A1.1(a); that a thirteen-level terrorism enhancement applies under § 3A1.4; and that a two-level obstruction enhancement applies under § 3C1.1. PSR, at ¶ 28-33.  "Based upon a total offense level of 34 and a criminal history category of VI," Defendant Salah's Guideline range would be "262 months to 327 months"; however, since that exceeds his cumulative statutory maximum sentence of 6 years of imprisonment, his "guideline range is 72 months." PSR, at ¶ 96.  Pursuant to § 5G1.2(d), the PSR recommends that the Court sentence Defendant Salah to 72 months in prison, apportioned as follows: "60 months as to Count 1 and 12 months as to Count 2, to run consecutively for a total term of 72 months." PSR, Sentencing Recommendation, at 2; U.S.S.G. § 5G1.2(d) ("If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.").

**B.      Government's Formal Response to the PSR**

As detailed in the Government's Formal Response to the PSR (ECF 114), the United States (1) agrees with the PSR's calculation of Defendant Salah's base offense level and its application of the above-listed enhancements; (2) offers additional evidence and argument in support of the terrorism and obstruction enhancements; and (3) respectfully submits that a six-level enhancement for intent to carry out the threat (§ 2A6.1(b)(1)) should also be applied.  Application of this specific offense characteristic ("SOC") would increase Defendant Salah's total offense level to 41, but, for the reasons set forth in PSR ¶ 96, it would not change his ultimate Guideline range of 72 months in prison.

**C.      Government's Response to Defendant's Formal Objections to the PSR**

In Defense Objections to Presentence Report (ECF 115), Defendant Salah raises six objections to the PSR.  For the following reasons, none of the objections has merit.

First, Defendant Salah argues that Counts 1 and 2 are multiplicitous and that his sentences for Counts 1 and 2 cannot run consecutively. ECF 115, at 2-5.  He cites the correct standard (the *Blockburger* test), but applies it incorrectly.  The key question, under *Blockburger*, is not whether two counts are predicated on the same conduct, but whether each count requires proof of a fact that the other does not. *Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").  In *United States v. Wahchumwah*, 710 F.3d 862, 869 (9th Cir. 2013), the case Defendant Salah cites in support of his argument, the Ninth Circuit found that two counts were multiplicitous because they "prohibit the same offense": "[b]oth statutes require the knowing sale of a protected species."  By contrast, the two counts in this case each target different harms (making a hoax bomb threat, obstructing the free exercise of religion), and, as the jury instructions make clear, each required proof of a fact that the other did not.  Count 1 required proof that the defendant "conveyed false or misleading information" under circumstances "where a reasonable person could believe" it. ECF 101, at 24.  Count Two did not.  Count Two required proof that the defendant "obstructed or attempted to obstruct the congregants of the church referenced in Count Two of the Indictment in the enjoyment of their free exercise of religious beliefs." ECF 101, at 26.   Count One did not.  Because each count

required proof of a fact that the other did not, Counts 1 and 2 are not multiplicitous and his sentences on those counts may run consecutively. *See United States v. Love*, 642 F. App'x 700, 703 (9th Cir. 2016) (ruling that two counts predicated on defendant's use of the "same explosive" were "not multiplicitous under the *Blockburger* test" because "each statute requires proof of a fact the other does not"); *United States v. Mancuso*, 718 F.3d 780, 791 (9th Cir. 2013) (ruling that counts were "not multiplicitous," even though "the government relied on the same witnesses, events, and conduct to prove guilt on each count," because each count "required proof of an additional fact which the other did not"); *United States v. Brooks*, 610 F.3d 1186, 1195 (9th Cir. 2010) (ruling that charges for child sex trafficking and interstate transportation of a minor for purposes of prostitution were not multiplicitous, even though they were based on the same conduct, because each count required proof of a fact that the other did not).

Second, Defendant Salah objects to the PSR's application of the terrorism enhancement (§ 3A1.4). ECF 115, at 5-7. The United States respectfully submits that application of the terrorism enhancement is warranted for the reasons detailed in the PSR, ECF 113, and the Government's Formal Response to the PSR, ECF 114, at 4-7.

Third, Defendant Salah argues against application of the SOC for intent to carry out the threat (§ 2A6.1(b)(1)). ECF 115, at 7-9. The United States respectfully submits that application of the six-level enhancement for this SOC is warranted for the reasons detailed in the Government's Formal Response to the PSR, ECF 114, at 2-4.

Fourth, Defendant Salah objects to the PSR's application of the obstruction enhancement (§ 3C1.1). ECF 115, at 5-7. The United States respectfully submits that application of the terrorism enhancement is warranted for the reasons detailed in the PSR, ECF 113, and the Government's Formal Response to the PSR, ECF 114, at 7-10.

Fifth, Defendant Salah objects to the PSR's application of the SOC for substantial disruption of public services (§ 2A6.1(b)(4)) on the basis that "there was not a general evacuation of the church." ECF 115, at 10. However, the fact that only *some* of the people were evacuated and only *some* of the church was barricaded and shut down does not mean that Defendant Salah's bomb threat did not cause a substantial disruption to church services. *See United States v. Dudley*, 463 F.3d 1221, 1226 (11th Cir. 2006) (affirming district court's judgment that letter threatening anthrax contamination, which "resulted

in closing half a floor of the state courthouse for two hours," caused "substantial disruption" warranting the enhancement under § 2A6.1(b)(4)); *United States v. Carter*, 651 F. App'x 474, 476 (6th Cir. 2016) (affirming district court's judgment that letter threatening anthrax contamination, which caused a district attorney's office to "mostly shut down" for part of the day, send some employees home, and prevent other employees from entering the office, caused "substantial disruption" warranting the enhancement under § 2A6.1(b)(4)).  As witnesses testified at trial, Defendant Salah's hoax bomb threat diverted church security personnel from church services and caused church security personnel to evacuate the special needs classroom, bar special needs students from entering the area, barricade the hallway, and shut down the café—measures that disrupted church services and understandably caused fear and alarm among church congregants.  Based on that evidence, the PSR properly applied the four-level enhancement for substantial disruption of public services. PSR, at ¶ 29.

Sixth, Defendant Salah asserts that, notwithstanding his net worth of $330,200, he is unable to pay a fine. ECF 115, at 11.  The government takes no position on the PSR's judgment that Defendant Salah "has numerous assets, no debt, and is physically able to gain employment," and thus "has the ability to pay a fine." PSR, at ¶ 94.

### III.    GOVERNMENT'S SENTENCING RECOMMENDATION

The United States respectfully submits that a sentence within Defendant Salah's initial Guideline range of 262 to 327 months of imprisonment—a range that captures the full scope of his conduct— would be an appropriate punishment for Defendant Salah, an extremist who was building a bomb and had conducted dry runs in furtherance of his plot to bomb a Christian church.  Because his initial Guidelines range exceeds his statutory maximum sentence of 72 months in prison, the United States agrees with the Probation Officer's recommendation to sentence Defendant Salah to 72 months in prison. The government's requested sentence is the minimum sentence necessary to further the statutory goals of sentencing because, as explained below, it would account for "the nature and circumstances of the offense" and "the history and characteristics of the defendant," and it would capture "the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)-(a)(2).

A.    <u>Nature and circumstances of the offense</u>

Where, as here, a defendant is arrested before he can carry out a broader criminal plot, a court's inquiry into the nature and circumstances of the offense focuses on "the crimes [the defendant] sought to commit," not just the crimes he was able to commit before his arrest. *See United States v. Ressam*, 679 F.3d 1069, 1090 (9th Cir. 2012) (en banc) ("The first factor identified in § 3553(a) to be considered in sentencing is 'the nature and circumstances of the offense.' The crimes [the defendant] sought to commit were horrific. . . . Had [he] succeeded in his plot to blow up LAX, it would have resulted in many deaths and injuries, substantial property damage, and enormous disruption to the nation's transportation system."); *United States v. Abu Ali*, 528 F.3d 210, 264 (4th Cir. 2008) (characterizing the defendant's plot to commit terrorist attacks as "offenses of the utmost gravity," notwithstanding the fact that his plot was thwarted and he never "injured any people," pointing out that "had [the defendant's] plans come to fruition, they would, according to his own words, have led to massive civilian casualties").

The nature and circumstances of Defendant Salah's plot to bomb a Christian church, which "would have resulted in many deaths and injuries" if his plan had not been thwarted by the FBI, are truly "horrific" and justify a serious prison sentence. *Ressam*, 679 F.3d at 1090; *see also United States v. Alowemer*, 96 F.4th 386 (3d Cir. 2024) (characterizing defendant's plot to bomb a church as a "serious crime[] deserv[ing] serious punishment").

That Defendant Salah was arrested before he could carry out his planned attack does not make the nature of his crimes any less serious and does not entitle him to a lesser sentence. *See Abu Ali*, 528 F.3d at 267 ("We reject the view that the gravity of [the defendant's] conduct should be so deeply discounted because his efforts to commit a horrific crime were thwarted. Although it is true that [defendant's] dream of inflicting devastating harm on America did not become a reality, it bears repeating that he was stopped only because he was apprehended before his plots could be put into action, and not because he had changed his mind or abandoned his plans.").

Defendant Salah's terrorist motive and elaborate terrorist plot distinguishes this case from a run-of-the-mill hoax threat case where a defendant lashes out in a one-time fit of rage or bout of intoxication.

This Defendant wanted to "destroy" America[1] by bombing Christian churches, and over the course of several months, he built a bomb and conducted dry runs at Christian churches in furtherance of that attack. His sentence should reflect the gravity of his plot. *Ressam*, 679 F.3d at 1090 ("[T]hat [defendant's] crimes were in furtherance of a terrorist attack compounded the severity of the crimes.").

The nature and circumstances of Defendant Salah's offense are most closely analogous to Mustafa Alowemer's plot to bomb a Christian church in Pittsburgh. *Alowemer*, 96 F.4th at 386-88. In that case, like in this one, the defendant "scoped out the church" and "bought supplies to build a bomb" but was arrested before he could carry out the attack. *Id.* at 388. In that case, like this one, the defendant targeted a Christian church in America to get revenge against the U.S. military for "invading the Middle East." *Id.* at 388. The district court applied the terrorism enhancement on that basis, and sentenced the defendant to 208 months in prison, a sentence the Third Circuit affirmed on appeal, emphasizing that "[s]erious crimes deserve serious punishments." *Id.* at 387.

Defendant Salah's plot to bomb a Christian church is likewise a serious crime warranting serious punishment.

**B.    History and characteristics of the Defendant**

Had Defendant Salah accepted responsibility for his conduct, expressed genuine remorse for its consequences, and shown a desire to change his ways, that could have given this Court some hope about his prospects for rehabilitation.

He has done the opposite. He lied to the police. He lied to the FBI. He destroyed evidence. He asked his mother to hide evidence. He refused to provide his DNA. He took the stand and lied under oath for two straight days. During his presentence interview, when given another chance to accept responsibility for his crimes, Defendant Salah did not apologize or indicate that he had learned and

[1] A cellphone video, dated November 10, 2023—two days before the crimes of conviction in Roseville, California—shows Defendant Salah outside a Christian church in San Francisco, California, with a black backpack. PSR ¶ 63. Defendant Salah points to an American flag and says, "Fuck that flag," and "America—we're going to destroy it." PSR ¶ 63. His statements on that video are consistent with statements he made to another witness, A.R., months earlier. When Defendant Salah observed A.R. wearing a hat with the American flag on it, Defendant Salah exclaimed "fuck this country" and "I hate America," elaborating that he was angry with the U.S. military for bombing and killing Iraqis. PSR ¶ 38. A cellphone video taken during that period shows an American B52 bomber, with Defendant Salah commenting: "Idiots, what is this you are displaying? All the world got killed by this U.S. Air Force airplane! You must remove it, otherwise I will remove it. There is no God but Allah."

grown from the experience; to the contrary, when asked by the Probation Officer if he needs to make any changes, Defendant Salah responded "possible," adding that he needed to find better employment. PSR, at ¶ 80.

Defendant Salah's "disturbing lack of remorse for, or even appreciation of, the seriousness of the totality of his conduct," and his willingness to lie to law enforcement and this Court to avoid responsibility for it, are factors that make him a poor candidate for rehabilitation and warrant a significant sentence of incarceration. *United States v. Broxmeyer*, 699 F.3d 265, 295 (2d Cir. 2012); *see also Sexton v. Cozner*, 679 F.3d 1150, 1160 (9th Cir. 2012) ("I'm not optimistic about this defendant's likelihood of rehabilitation. In addition to the lack of remorse and regret, this defendant also apparently was willing just a short time ago to deny any responsibility for these crimes and, in fact, to falsely accuse his younger brother of committing these heinous crimes."); *United States v. Hilgers*, 560 F.3d 944, 948 (9th Cir. 2009) ("The district court's conclusion that a significant sentence was necessary to accomplish the purposes of the Sentencing Reform Act is supported by" a number of findings, including "his lack of remorse"); *United States v. Mix*, 457 F.3d 906, 913 (9th Cir. 2006) (ruling that defendant's "refus[al] to accept responsibility for his conduct and his acts" was one factor "justif[ying] the above-guidelines sentence" imposed).

## C.    Specific Deterrence

A defendant who refuses to admit he has done anything wrong is unlikely to change his behavior; in such cases, incarceration is necessary to further the goal of specific deterrence. *See United States v. Easterling*, 811 F. App'x 306, 312 (6th Cir. 2020) (ruling that significant prison sentence was necessary to "deter" the defendant, who "continued to deny that he had done anything wrong"); *Thornton v. S.E.C.*, 199 F.3d 440 (5th Cir. 1999) ("Because Mr. Thornton refuses to acknowledge that he has ever done anything wrong, the probability that he will continue violating the securities laws and regulations is almost certain."); *United States v. Thompson*, 130 F.4th 1158, 1167 (9th Cir. 2025) (ruling that district court's failure to appropriately weigh evidence that defendant violated a court order and lied about it, which the Ninth Circuit deemed "highly relevant evidence" of the defendant's "risk of recidivism" and the need for "specific deterrence," was an abuse of discretion).

The consequences of not adequately deterring a defendant become especially dire in cases, like

1    this one, in which the defendant was plotting attacks against innocent civilians.  As the Second Circuit

2    pointed out, "in no area can the need for adequate deterrence be greater than in terrorism cases, with

3    their potential for devastating loss of innocent life." *United States v. Stewart*, 590 F.3d 93, 181 (2d Cir.

4    2009) (Walker, J., concurring); *see also United States v. Mohamed*, 459 F.3d 979, 984 (9th Cir. 2006)

5    (justifying an above-guidelines sentence on "the need to provide both general and specific deterrence for

6    crimes as reckless as [the defendant's] bomb threat").

7         With those principles in mind, the government respectfully submits that a 72-month sentence is

8    the minimum sentence necessary to deter Defendant Salah from engaging in similar conduct.

9         **D.    Just Punishment**

10        The statutory requirement under § 3553(a)(2) that a sentence "provide just punishment for the

11   offense" is another way of saying that it must be substantively reasonable in light of the nature and

12   circumstances of the offense and the aggravating and mitigating factors.  The Guidelines are designed to

13   accomplish that goal by starting with a base offense level that captures the nature and circumstances of

14   the offense and applying aggravating and mitigating factors to arrive at an incarceration range that

15   reflects "just punishment for the offense." *See* U.S.S.G. Chapter One, Part A (2025).

16        Defendant Salah's Guideline range, without factoring in his statutory maximum sentence, is 262

17   months to 327 months of imprisonment. PSR, at ¶ 96.  A sentence within that range would be just

18   punishment for his offense.  The United States is recommending a sentence of less than one-third of the

19   low end of that range—72 months in prison—because a sentence any higher than that would exceed his

20   statutory maximum sentence.  Given that a 72-month sentence already represents a significant

21   downward departure from the Guideline range warranted by his conduct, the United States respectfully

22   submits that any further downward departure would not be substantively reasonable and would not

23   reflect just punishment for his crimes. *See Ressam*, 679 F.3d at 1090 (ruling that sentence of 22 years in

24   prison—a downward departure from the defendant's Guidelines range of 65 years to life—was

25   substantively unreasonable for a terrorist who plotted to bomb an airport, in part because"[t]he

26   Sentencing Guidelines specifically provide for a substantial upward adjustment for federal crimes of

27   terrorism" and "[t]he sentence imposed by the district court effectively negated that adjustment."); *Abu Ali*,

28   528 F.3d at 264 (ruling that 30-year sentence—a downward departure from the defendant's Guidelines

range of life in prison—was substantively unreasonable in part because "[p]lotting terrorist attacks on the civilian population" is an offense "of the utmost gravity"); *United States v. Bond*, 56 F.4th 381, 384–85 (4th Cir. 2023) ("We agree with the district court that . . . reducing [defendant's] sentence so far below the initial Guidelines range wouldn't be 'just punishment' for [his] crimes").

### E.    Protect the Public

A substantial prison sentence is necessary to capture the inherent danger and high risk of recidivism posed by terrorists like Defendant Salah and the corresponding need to incapacitate them to protect the public. *See United States v. Jayyousi*, 657 F.3d 1085, 1117 (11th Cir. 2011) ("Terrorists, even those with no prior criminal behavior, are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation."); *United States v. Meskini*, 319 F.3d 88, 92 (2d Cir. 2003) ("An act of terrorism represents a particularly grave threat because of the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal, and thus that terrorists and their supporters should be incapacitated for a longer period of time.").

Through his conduct, Defendant Salah "demonstrated strongly held beliefs and a willingness to attack American interests," and "when he is released, he could try again" to bomb a church or "launch some other attack." *Ressam*, 679 F.3d at 1090.  That concern is "particularly powerful" because Defendant Salah will not be an elderly man upon his release; he will be in his 40s or 50s and "sufficiently active and capable . . . to do considerable damage." *Id.*  A significant prison sentence is necessary to protect the public from future attacks by Defendant Salah.

Even if Defendant Salah does not succeed in building a functioning bomb, his persistent "hoax bomb threats" to houses of worship are "serious and harmful" in their own right "in an age of terrorism," and a significant sentence of incarceration is necessary to protect the public from them. *See Mohamed*, 459 F.3d at 984 (applying significant upward departure to the guideline range of a defendant convicted of committing a hoax bomb threat, citing "the need to protect the public from him, the need to provide both general and specific deterrence for crimes as reckless as his bomb threat, the comparatively serious and harmful nature of the threat in an age of terrorism, and the substantial disruption caused by the hoax"); *see also United States v. Garey*, 546 F.3d 1359, 1364 (11th Cir. 2008) (ruling that 360-month sentence for hoax bomb threats was reasonable).

GOVERNMENT'S SENTENCING MEMORANDUM    10

1

IV.    **CONCLUSION**

2      The United States respectfully recommends that the Court impose a sentence of 72 months of

3   imprisonment, which is the low end of the defendant's final Guideline range and a significant downward

4   departure from his initial Guideline range of 262 months to 327 months of imprisonment.  For the

5   reasons set forth in this memorandum, the government's requested sentence is the minimum sentence

6   necessary to further the statutory goals of sentencing set forth in 18 U.S.C. § 3553(a).

7

8                                         Respectfully submitted,

9

10                                        ERIC GRANT
                                          United States Attorney

11

12      _____/s/_____
                                          SHEA J. KENNY
13                                        Assistant United States Attorney

14

15                                        HARMEET K. DHILLON
                                          Assistant Attorney General
16                                        Civil Rights Division

17      _____/s/_____
                                          CHRISTOPHER J. PERRAS
18                                        Special Litigation Counsel
                                          SARAH E. HOWARD
19                                        Trial Attorney

20                                        Attorneys for United States of America

21

22

23

24

25

26

27

28

GOVERNMENT'S SENTENCING MEMORANDUM    11