LAW OFFICE OF MICHAEL HEUMANN
Michael Heumann, CA SBN 299622
901 H Street, Suite 405-5
Sacramento, CA 95814
Telephone: (916) 426-6692
mikeheumann.law@gmail.com
Attorney for Defendant
ZIMNAKO SALAH

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>vs.<br><br>ZIMNAKO SALAH,<br><br>            Defendant. | Case No.: 2:24-cr-00043-DC<br><br>DEFENSE SENTENCING MEMORANDUM<br><br>SENTENCING DATE: NOVEMBER 7, 2025<br>TIME: 9:00 a.m.<br>COURT: Hon. Dena. Coggins |

Mr. Salah, by and through undersigned counsel, respectfully recommends that Mr. Salah be sentenced to time served. Mr. Salah has been in custody for almost two years. He was initially arrested in San Diego on November 28, 2023, and held in custody on state charges. He was transferred to federal custody on February 15, 2024 after he was released from custody on the state charges.

///

///

1

I. **SUMMARY.**

After a trial in March and April of this year, Mr. Salah was convicted of Count 1, a bomb hoax, and Count 2, obstructing the free exercise of religious beliefs. On the two special findings regarding Count 2, the jury found that Mr. Salah selected the church because of their religion but did not find that his actions included the threatened use of a dangerous weapon or explosive.

Mr. Salah, who lives in Phoenix, AZ, traveled to California, Colorado, and Texas, and visited churches in the Denver, San Diego, and Roseville areas, concerning members of those churches. At the Roseville church, which is the basis for the charges in this case, he entered the church on Sunday morning and left a backpack containing a pillow attached to a toilet. The backpack was discovered and ultimately removed by church staff. Considering the factors delineated in 18 U.S.C. § 3553, a sentence of time served is appropriate particularly in light of the nature and circumstances of the offense and Mr. Salah's lack of criminal history.

The defense submits that the offense level in this case is 15, with an initial offense level of 12 and an additional 3 points for the victim related adjustment in paragraph 30 of the PSR. Mr. Salah should be in criminal history category I because he has no prior convictions. This results in a guidelines range of 18-24 months.

II. **NATURE AND CIRCUMSTANCES OF THE OFFENSE.**

Relative to other hoax bomb threats, Mr. Salah's conduct was not sophisticated and less harmful than other offenses of this type because it took the form of leaving a suspicious backpack, as opposed to a more direct threat such as a phone call stating there was a bomb present.

The manner of the hoaxes was less harmful relative to other types of hoaxes, such as delivering an explicit bomb threat by telephone, email, or note. An explicit threat is more

disruptive to the victim because it both demands a stronger response, such as evacuating the building, and also makes it more difficult to ensure that the threat has been eliminated, because the victim is obliged to search for something that isn't there, an impossible task. If Mr. Salah had called the victim church and informed them that a bomb had been left on the premises, they would have been virtually obligated to evacuate the entire church complex – no leader would want to continue services after a bomb had been reported. After evacuating, they would have been obliged to conduct a search the church grounds, likely with the assistance of police bomb squads as opposed to the shorter search conducted by the security in this instance. The nature of such a threat – where the threat is unambiguous but its nature is unclear, demands such a response.

      Additionally, Mr. Salah did not put anything in the backpack that would resemble a bomb upon closer inspection, such as something that would make a ticking noise, wires, or anything resembling explosives. When the backpack was inspected more closely nothing supported the initial concern that it might be a bomb. The same is true of the backpack left in the Phoenix church. If the harm of a hoax is judged, then, by the fear it creates in the victim and the level of disruption it creates, Mr. Salah's conduct ranks relatively low among hoaxes because the backpack presented as something that was perhaps a bomb, instead of certainly a bomb.

      Additionally, Mr. Salah did not fixate on the Roseville church, or any other church. He traveled to Roseville as one of many cities, visited the church two days in a row, left a backpack, and never returned. This is significant because repeated conduct directed towards a single victim suggests a focus that rightfully magnifies the fear felt by the victim – it says that the victim is being focused on and should expect further threats, or possibly more, in the future. A single incident does not carry the same gravitas.

The government argues, however, that this incident is actually aggravated because it was mere preparation for an actual bombing. This is not supported by the facts.

First, Mr. Salah's actions were not escalating. He did not engage in more mild conduct at the Phoenix church he visited, escalating to more egregious conduct at subsequent churches. Instead the conduct at both churches where he left backpacks was the same, leaving a backpack filled with a pillow or with clothes.

Second, the evidence does not show that Mr. Salah was making a bomb in the storage unit, a key part of the government's argument. The government's own experts testified at length about the difficulty involved in turning a propane canister into a bomb, which would require (a) a large heat source, such as a stove or campfire, (b) a method puncturing the canister such as shooting it with a gun, (c) a method of opening the container to put an igniter inside the canister while also balancing the right mixture of propane and oxygen, or (d) taking all the propane out and putting a more suitable explosive inside instead. The government's experts were unable to explain how the items located in the storage unit would turn into a bomb with a viable ignition mechanism inside a backpack.

Beyond that, the way that Mr. Salah was kicked out of the storage unit did not give him much time to disassemble the components in the storage before he left in a hurry – and if he had, it would have been more natural to take his project with him. But he did not, and likewise subsequent searches of his house and vehicle showed no efforts to proceed with making an explosive, suggesting that making a bomb was not a goal of his.

Third, the government's core argument, that Mr. Salah was angry at Christians and wanted to do something about it, does not necessitate escalation to actual explosives. He might have decided that harming people was a step too far, and intended only to ever cause fear, which

4

his actions did. The jump to assuming that a bomb hoax in the present means bombs were coming in the future does not match the evidence before the court.

### III. THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Mr. Salah has lived a quiet life for most of the past 20 years. He lives with his mother, who is 75 years old, in Phoenix, AZ. The two of them care for each other, and have lived together for most of the last 20 years. He has worked as a mechanic and a handyman. Sometimes he has obtained steady employment working at a shop. Other times he has worked for himself, buying used and broken vehicles and appliances and fixing them to resell.

During the 20 years he has lived in the US, he has never been charged with a crime, let alone convicted, until he was arrested in San Diego, which was related to this case.

Additionally, Mr. Salah has disassociated himself from whatever beliefs may have motivated him. He testified at length at trial. One point that he emphasized, repeatedly, is that he does not hate Christians, and respects their religion. Even if Mr. Salah is not to be believed, which the government will surely argue, it is at a minimum worth something that Mr. Salah was willing to verbally condemn religious bigotry, something he did not have to do. Similarly, Mr. Salah spoke at length about his rejection of Islamic extremism, and his conviction that his religious beliefs prohibited any sort of attacks of the sort the government fears. He was not required the testify, and instead chose to take the stand and denounce the beliefs to which the government attributes his actions.

When he is released, Mr. Salah, who is currently 46 years old, will be at a crossroads in his life. He has worked in manual labor his entire life, but as he gets older that path is more difficult. He will need to find a sustainable way to support himself, and his aging mother. He will also need to decide whether going forwards he will be the extremist the government believes he

is, or the helpful, productive citizen that he has been up until the events of the present case. The defense submits that supervision is a better tool to ensure he stays on the right path and to help him make these adjustments to his life than incarceration.

### IV. HIS REFUSAL TO ADMIT GUILT SHOULD NOT BE HELD AGAINST HIM

Mr. Salah is not the violent, unrepentant terrorist the government suggested in the trial. He is a person, with a mother that depends on him, who made serious mistakes by committing the charged offenses. However, he has spent a substantial period of time in custody which is sufficient punishment for his actions.

Respectfully submitted,

DATED: October 30, 2025

By    /s/ Michael Heumann
       MICHAEL HEUMANN
       Attorney for Defendant
       ZIMNAKO SALAH